## ADAM KUCHENBEISER *et al.*

### *v.*

## CHARLES BECKERT *et al.*

1. CHANCERY—*prayer of relief—informality.* Where the prayer for relief in a bill is good in substance but informal, it should be taken advantage of by demurrer, and the informality is waived by answer; otherwise where it is substantially defective, so that it does not appear what relief is sought.

2. SAME—*bill to impeach a decree rendered against a minor defendant.* Where a decree in chancery has been rendered against a minor defendant, he is entitled to his day in court, whether the right is expressly reserved in the decree or not, and he may, even during his minority, by his next friend or guardian, file an original bill to impeach the decree, either for fraud or for error appearing on its face.

3. LIMITATION—*within what time such a bill must be filed.* The remedy by such a bill would be barred, however, by delay in filing it after the infant defendant has attained his majority, for the period which bars a writ of error.

4. MISTAKE—*degree of proof required.* A deed should be reformed in its terms by a court of chancery, for an alleged mistake therein, only upon strong and satisfactory evidence.

WRIT OF ERROR to the Superior Court of Chicago.

This was a suit in chancery commenced by Adam Kuchenbeiser, Elizabeth Kuchenbeiser, and Henry May, who sues by his next friend, Conrad Weisgerber, in the Superior Court of Chicago, against Charles Beckert, Elizabeth Beckert and Peter Hoffman. The bill was filed to impeach and set aside a decree rendered in a former proceeding, in the Cook County Court of Common Pleas, wherein the same property was involved and the same persons were parties. The bill alleges that the former decree was obtained, divesting complainants of their title to real estate in the city, by fraud, and that it was erroneous.

It appears that Henry May was a minor when this bill was filed, and he sues by his next friend. The cause was heard in the court below on the bill, answer, exhibits and proofs, and the court refused the relief and rendered a decree dismissing the bill. To reverse that decree, complainants bring the record to this court on error. The facts appear sufficiently in the opinion of the court for a proper understanding of the case.

Mr. SIMEON W. KING, for the plaintiffs in error.

Messrs. GOODRICH, FARWELL & SMITH, for the defendants in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a suit in chancery brought by plaintiffs in error, in the court below, against defendants in error, to impeach a decree previously rendered by the Cook County Court of Common Pleas, between the same parties, and involving the same matters of litigation. Also to reform a deed made for the premises under the decree then rendered. It appears from the record, that Elizabeth Kuchenbeiser and Henry May are the children and heirs of Lorenzo May, deceased; that Elizabeth has intermarried with Adam Kuchenbeiser, and that Henry is a minor. That the father of complainants, in the

year 1847, purchased of William E. Janes and William B. Ogden, who were the agents of Stephen F. Gale, the lots in dispute, each of which contained one acre of ground. May, at the time, received a written contract for a conveyance upon the payment of $475, a portion of which he paid at the time, and gave his four notes for $50 each, payable yearly. That he paid, in 1849, $63.12 on the unpaid portion of the purchase-money.

On the 15th day of August, 1849, May died intestate, leaving, surviving him, Elizabeth, his widow, and their children, Elizabeth, Jacob and Henry May, who were minors. That, previous to his death, he had erected a dwelling-house on lot twenty-one, and inclosed both lots, and, with his wife and children, resided upon and occupied the lots at the time of his death. That the rights and interest of May in the premises descended to his children, subject to the payment of the unpaid balance of $150 of the purchase-money. May's widow and children continued to occupy the lots after his death, and about nine months after that time the widow intermarried with defendant, Charles Beckert, who continued to occupy the house and premises.

Afterward, the contract was declared forfeited for non-payment of the purchase-money, but, at the same time, a written memorandum was indorsed upon the contract, stating that it was proposed to convey lot twenty to the heirs of May, subject to the life lease of the north half of lot twenty-one to E. Zimmer, which was then contracted to Charles Beckert, when the latter lot should be paid for by him. It appears that Mrs. Zimmer, the mother of Mrs. Beckert, had furnished money to May in his life-time to pay on the purchase, and it was desired to secure her such an interest in the premises as would afford her a home during the remainder of her life.

Afterward, on the 30th day of November, 1850, in pursuance to the memorandum indorsed on the original contract, Ogden executed a contract to Beckert, for the conveyance of lot 21, which is proved to have been then worth one thousand dollars, on the payment of $173, the balance of the purchase-

money due on May's contract, to Mrs. Beckert, or some one in trust for her. He, at the same time, as attorney in fact for Gale, conveyed lot twenty to the heirs of May, with a life lease to Mrs. Zimmer on the north half of that lot.

About the 9th of March, 1852, Beckert and wife, who had, it appears, received moneys from Mrs. Zimmer at different times, entered into a written contract with her, by which they bound themselves to board, and supply with fuel, stove, room and nursing, etc., to her, so long as she should live, and the better to secure the undertaking agreed, that a clause should be inserted in the deed for lot 21 when made, that she should have the right to her bed, a place for it, and the right to enter into the house and occupy it in peace and quiet so long as she should live, and authorized Ogden to insert such a provision in the deed. A further agreement was afterward, on the 13th day of June, 1855, entered into by the parties, by which it was stipulated that the former agreement was to be considered as fulfilled, in consideration that Beckert had built a dwelling-house for Mrs. Zimmer on the north half of lot 20, and a further stipulation was then made, to support her, and in case of sickness to reinstate her in her room, and provide her every comfort when sick, or too old and feeble to care for herself. This latter agreement contained a provision, that lot 21 should be conveyed to John B. Gerard, in trust for Elizabeth Beckert, for the support of herself and husband during their lives, in remainder to the heirs of May, with conditions for protecting the interests of Mrs. Zimmer, and the right to sell, change or reinvest as provided in the deed.

Beckert paid the balance of the purchase-money, and Ogden caused a deed to be made for lot 21, in conformity with the agreement, which bears date the 27th day of November, 1855. Afterward, on the 29th day of June, 1857, Beckert and wife filed a bill in the Cook County Court of Common Pleas, in which they allege that the deed was made through mistake and misapprehension of its effect by them. They allege that the clause in the deed giving them a life estate and in remainder in fee to May's heirs should not have been inserted, but that it

should have been in trust in fee to Mrs. Beckert; and that they understood the deed to have been so made, and with that understanding they had sold a portion of the lot. They prayed that the deed might be reformed. On a hearing in that case the court granted the relief, and the deed was reformed according to the prayer.

The bill in this case is filed to impeach and reverse that decree, and alleges that it was rendered on insufficient proof, and that Beckert and wife fraudulently used the forms of law to deprive plaintiffs in error of their rights in the property, and prays for a restoration of rights, under the deed to Gerard, and that he hold the property in trust according to the terms of that deed, with remainder over to them. That, on the hearing of the former cause, the court was misled and induced to make the decree by the false pretenses of Beckert and wife; and that their fraudulent acts in procuring the decree entitles them to have it reversed, canceled, annulled, and made void and of no effect.

It is insisted by defendants in error, that this bill is defective in the prayer. It is certainly inartificially and informally drawn. It is so much so, that it would have been subject to a demurrer had one been interposed. The bill alleges that the decree was procured by fraud, and it states that it should be set aside, canceled and held to be void by the court, and proceeds, " as your orator and oratrix prays may be done." It thus clearly appears that relief was sought, and it informally asks for the desired relief. By answering, defendants waived this formal objection, and it is now too late to raise it for the first time in this court. Had the objection been taken on the hearing, the court would have permitted the prayer to have been amended; but it would have been otherwise had the bill been defective in substance, as that could have been urged at any stage of the proceeding. Or, had there been no prayer, or had it failed to appear what relief was sought, or had it even been doubtful, a different question would have been presented.

It was urged, that the trial was had and the decree executed and carried into effect so long since, that it should not now be disturbed. This would be unquestionably true, had the parties

all been adults, when the decree was rendered, or had the period elapsed, which bars a writ of error, after the minors had become of age. But under our practice a minor defendant to a bill is entitled to his day in court, whether it is expressly reserved by the decree or not, and he may at any time during his minority, by his next friend or guardian, file an original bill to impeach a decree against him. *Loyd* v. *Malone*, 23 Ill. 43. It was held, in that case, that such a bill might be filed to impeach a decree for fraud, or even for error appearing in the former decree. With that rule we are satisfied, and have no disposition to limit or qualify its application in practice. And, as it appears that Henry May was, at the time this bill was brought, still a minor, as well as at the time the former decree was rendered, he, therefore, had the right to file a bill to impeach that decree for fraud, or even for an error appearing on face of the decree.

Treating this bill, as we think we should, as an original bill to impeach the former decree, were complainants entitled to the relief sought? It is manifest, from the evidence upon which that decree was rendered, that it fails to authorize the decree. After the forfeiture of the first agreement for a conveyance, the new agreement then entered into provided that lot twenty-one should be conveyed to the trustee for the support of Beckert and wife during their lives, with remainder in fee to the children of May. And the deed was executed and received in conformity with that agreement, and the evidence of the trustee wholly fails to prove any mistake. If his evidence is considered without reference to the deed as proof in the case, we do not see that it would authorize a decree on the written agreement for a deed as it was reformed by the court, and when a deed is produced duly executed, and received by the grantees, it should require strong and satisfactory evidence to authorize any reformation or change in its terms.

Gerard, in his evidence, and the former decree was based upon it, does not distinctly say that there was a mistake in drafting the deed, or in drawing the contract under which it was made. He says, that there were many conversations in

reference to the matter; and it was understood that May's heirs were to have lot twenty, and Beckert was to pay for twenty-one, but it was to be conveyed in trust for Mrs. Beckert, and revert to Charles Beckert at the death of his wife, charged with the support of Mrs. Zimmer. That Ogden drew the agreement quickly, and that was his impression at the time he testified; that Ogden, by mistake, wrote "heirs of Lorenzo May," instead of the "heirs of Charles Beckert." It is almost impossible to conceive how such a mistake could have occurred, and not have been detected, either when the agreement was written or the deed was made. It seems to us that Ogden, Gerard or Beckert must have discovered the mistake, had one occurred. The execution of the deed with that clause in it, and its reception by the grantee, is almost conclusive evidence that it truly expressed the agreement of the parties. While it may be impeached, it should only be done on the most satisfactory evidence. In this case Gerard only gives it as his impression that a mistake was made. It would be dangerous, indeed, to tenures, if mere impressions could overturn estates, and destroy the highest evidence of ownership of lands. This evidence was manifestly insufficient to warrant the former decree reforming the deed, and the decree would have been reversed on this evidence.

It is urged, that Beckert and Mrs. Zimmer were Germans, and unable to understand the English language, and Gerard so testified in the former case. If this were true, we do not perceive that it would authorize them to repudiate a contract deliberately entered into, when the law presumes, that they were informed of the nature and effect of their acts. They had the means, if necessary, to ascertain the effect of the deed by an interpreter or otherwise, and the law will presume that they did so before the transaction was consummated. But, so far from such being the fact, the evidence shows that the parties were informed, understood and assented to the agreement, and the deed made in accordance therewith. Ogden testifies, that lot twenty-one, at the time the forfeiture was declared, and it was resold to Beckert, was worth one thousand dollars, that it

was supposed, the life estate in the premises, to him and his wife, would fully compensate him for paying the balance of the purchase-money, which was but about one hundred and seventy-five dollars. He also states that he would have sold to Beckert on no other terms, than May's children should get the ultimate fee; and that he has no doubt it was fully understood by the parties. When this evidence is considered, in connection with the written agreement and the deed, we are unable to see how it could be possible for them to have been mistaken. Again, two or three persons swear, that Beckert then could speak the English language reasonably well, and could read and understand it.

The former decree being clearly erroneous, and Henry May being a minor when this suit was brought, he must be allowed his day in court, for the purpose of avoiding the decree. Such is the practice, and we regard it reasonable and just, that minors of tender years, who are incapable of looking to and protecting their interests, and where their rights are intrusted to others indifferent to their welfare, or whose interests clash with the rights of the minor, should have the right, on arriving at age, to impeach a decree for error, where the decree injuriously affects their rights. We deem it unnecessary to discuss the question of fraud in procuring the decree. The decree of the court below is reversed, and the cause remanded.

*Decree reversed.*