(No. 19699.—

ALLEN F. MOORE, Defendant in Error, *vs.* STANLEY F. SIEVERS, Plaintiff in Error.

*Opinion filed October 19, 1929.*

J. L. HICKS, guardian *ad litem*, for plaintiff in error.

HERRICK & HERRICK, and CARL S. REED, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

Allen F. Moore brought suit to quiet his title to certain real estate in Piatt county against Stanley F. Sievers, a minor, and Tonie W. Doss, his guardian. A guardian *ad litem* was appointed, who filed a formal answer. The guardian also answered, and filed a cross-bill to set aside as fraudulent a guardian's deed made by Roy Sievers, who had been guardian of Stanley, conveying Stanley's interest in the premises to Silas L. Sievers, a deed from Silas to William L. Alexander, and a deed from Alexander to Allen F. Moore, both conveying the same premises, and to have partition. Moore answered the cross-bill, the cause was referred to a master, who took and reported the evidence with his recommendation that the cross-bill be dismissed and a decree quieting the title be entered on the original bill. The court heard the cause on exceptions to the master's report, which were overruled, and entered a decree dismissing the cross-bill for want of equity and quieting the title as prayed in the original bill. A writ of error has been sued out on behalf of the minor.

The following facts were shown by the pleadings and the evidence: Ella Sievers (Silas' wife and Stanley's mother) died intestate on October 11, 1920, owning the

real estate in question and survived by her husband and eight children, whereby an eighth interest in the real estate descended to Stanley subject to Silas' dower. Roy Sievers, Stanley's brother, was appointed his guardian by the county court of Piatt county on April 18, 1922, and on May 10, 1922, filed a petition for the sale of his ward's interest in the real estate, showing that the minor had no other property, that the taxes on it were high and the income small, and that it was for the best interest of the ward to sell his interest in the land for his support and maintenance and for re-investment of such part of the proceeds as was not immediately needed for this purpose. An order of sale was entered as prayed, free of dower, Silas consenting to accept the value of his dower out of the proceeds of the sale. The order of sale provided that half the purchase price be paid in cash and for the remainder the purchaser should give his note due in one year, secured by mortgage on the premises, or, at the purchaser's option, he might pay the whole purchase price in cash. The master's report found that the guardian reported that the sale had been made on July 8 to Silas Siever for cash, though the guardian did not, in fact, receive the purchase price in cash but took the purchaser's unsecured note dated July 8 for the amount, payable one year after date. The court approved the sale, directed the execution of a deed conveying the premises to the purchaser and fixed the value of the dower interest at $917.73. The guardian thereupon conveyed the premises to Silas L. Sievers and the deed was recorded on July 13.

At the May term, 1924, of the circuit court of Macon county the guardian recovered a judgment in the amount of $5201.28 against Silas L. Sievers upon the note for $5500 which he had given for the ward's interest in the premises, and on September 1, 1924, Silas conveyed the premises and other real estate and personal property to William Alexander and Harry Swartz, together with a

trust agreement for the benefit of the creditors of Silas. Swartz afterward, on March 3, 1925, conveyed his interest to Alexander for the purposes of the trust. On May 28, 1924, Stanley Sievers, the minor, by his guardian, and other heirs of Ella Sievers, brought suit in chancery in the circuit court of Piatt county attacking, among other things, the guardian's deed by which title to the minor's interest had been conveyed to Silas Sievers, the basis of attack being the deception practiced on the county court in reporting falsely that the sale had been for cash when, in fact, no cash had been received. On December 2, 1924, the guardian filed his petition in the county court for authority to compromise the judgment against Silas Sievers for fifty cents on the dollar and to dismiss the chancery suit of May 28 as a part of the compromise, and on the same day an order of the county court was entered authorizing such compromise. In accordance with the authority so given the judgment was compromised for $2604.50, and on March 14, 1925, the guardian filed in the county court his report showing the receipt of that amount and the payment of certain costs and attorney fees out of it, leaving a balance in his hands of $2157.65. The chancery suit brought on May 28, 1924, was afterward dismissed, as directed by the order to compromise.

On March 26, 1928, Alexander and Moore entered into a written agreement for the sale of the land to Moore, the contract reciting that Stanley Sievers, a minor who would be seventeen years of age on April 21, 1928, had formerly had an interest in the premises which had been conveyed by the guardian's deed in question here; that Moore had raised the question as to the validity of that deed, whether the minor might claim an interest in the premises and a right to set the guardian's deed aside, and whether he was estopped to make any claim to the premises by virtue of the chancery suit of May 28, 1924. In consideration of these recitals Alexander agreed to bring in the circuit court

of Piatt county and prosecute to an adjudication in this court a suit to quiet title against any claim of the minor to an interest in the premises, and Moore retained $6500 of the purchase price which he agreed to pay for the premises, to await the outcome of such suit. In pursuance of that contract Alexander conveyed the premises to defendant Moore by deed dated February 29 and recorded March 1, 1928. The cross-bill seeks to set aside the guardian's deed to Silas Sievers, the deed of Silas to Alexander and the deed of Alexander to Moore. The validity of the guardian's deed is, of course, the important question in the case, for if that deed is invalid the others will fall with it, while if it is valid the plaintiff in error has no further interest in the land.

The order of the court authorizing the sale of the minor's interest in the land was valid. The court had jurisdiction of the subject matter and the parties, and its order is not subject to collateral attack and is not brought in question in this case. The order confirming the sale to Silas was procured by the false report of the guardian that he had sold the land for cash and the collusion of the guardian and the purchaser to present such false report showing a sale in compliance with the terms of sale prescribed by the court in its order. Without such a report the court would not have approved the sale, and the order of approval so procured was subject to attack collaterally for the fraud.

The right of an infant to maintain an original bill for relief against a decree rendered against him during his minority, for fraud or for error appearing on the face of the proceedings, is settled in this State by many decisions, and such bill may be filed during minority or within the time fixed by the statute for suing out a writ of error after the infant has attained his majority. (*Kuchenbeiser* v. *Beckert,* 41 Ill. 172; *Lloyd* v. *Kirkwood,* 112 id. 329; *Teel* v. *Dunnihoo,* 221 id. 471; *Sharp* v. *Sharp,* 333 id.

267.) However, innocent third parties purchasing, after the rendition of a decree, in reliance upon its validity, have a right to rely upon it and will be protected against any errors which might cause a reversal, except errors which show that the court was without jurisdiction to. render the decree. (*Mulford* v. *Stalzenback,* 46 Ill. 303; *Conover* v. *Musgrave,* 68 id. 58; *Fairman* v. *Peck,* 87 id. 156.) Where a court having jurisdiction of the parties and the subject matter has rendered a decree affecting the title to real estate, one purchasing in good faith before any action taken to avoid the decree has a right to rely upon it and will be protected in its purchase. In such case all that is required of the purchaser is to look to the jurisdiction of the court, and if the court has jurisdiction he will be protected. (*Smith* v. *Herdlicka,* 323 Ill. 585; *Thompson* v. *Davis,* 297 id. 11; *Kuzak* v. *Anderson,* 267 id. 609.) The rule as to the finality and conclusiveness of the decrees and orders of county courts and as to their immunity from collateral attack is the same as that which applies to courts of general jurisdiction. *Sheahan* v. *Madigan,* 275 Ill. 372; *Dole* v. *Shaw,* 282 id. 642; *Hoit* v. *Snodgrass,* 315 id. 548.

Though the county court of Piatt county had complete jurisdiction of the petition of the guardian to sell his ward's land and of the ward's person, and though its decree authorizing such sale is immune from collateral attack, yet if in the execution of the decree the terms on which the guardian was authorized to make the sale were disregarded, and by collusion between the guardian and the purchaser the land was sold entirely on a year's credit instead of for at least half the purchase price in cash and with no security for the deferred payment instead of a mortgage on the land sold, and by the same collusion the guardian made a false report of a sale for cash, by which the court was imposed upon and induced to believe that the guardian had received the whole purchase price in cash when he had received no part of it, and to confirm the sale, such conduct

and collusion constituted actual fraud, without which the sale would not have been confirmed. Where an order of court directs the manner of the sale of real estate the officer making the sale derives his authority to do so from the order of the court alone. It is his duty to conform to the order of the court, and unless he follows the directions of the order or decree his acts will be set aside. (*Jacobus* v. *Smith,* 14 Ill. 359; *Reynolds* v. *Wilson,* 15 id. 394; *Wilson* v. *Ford,* 190 id. 614; *Quick* v. *Collins,* 197 id. 391.) The maxim that fraud vitiates every transaction into which it enters applies to judgments as well as to contracts and other transactions. A court of equity has always the power to grant relief against judgments and decrees obtained by fraud, and this power will be exercised to prevent the enforcement of a judgment or decree which is against conscience, or where a party had no opportunity to defend, or was prevented by accident or the fraud or improper management of the opposite party and is without fault on his part. (*Farwell* v. *Great Western Telegraph Co.* 161 Ill. 522; *Elting* v. *First Nat. Bank,* 173 id. 368; *Atlas Nat. Bank* v. *More,* 152 id. 528; *Wing* v. *Little,* 267 id. 20.) In *Johnson* v. *Waters,* 111 U. S. 640, it was said: "The most solemn transactions and judgments may at the instance of the parties be set aside or rendered inoperative for fraud. The fact of being a party does not estop a person from obtaining in a court of equity relief against fraud. The court of chancery is always open to hear complaints against it, whether committed *in pais* or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor does it inquire into any irregularities or errors of proceeding in another court but it will scrutinize the conduct of the parties, and if it finds that they have been guilty of fraud in obtaining a judgment or decree it will deprive them of the benefit of it and of any inequitable advantage which they have derived under it."

The effect of the deception successfully practiced on the court was the fraudulent taking from the boy, Stanley, his title to the land and giving him instead an unsecured note, which his guardian could not or did not collect. Equity would not permit Silas, who had thus wrongfully and fraudulently obtained the legal title, to retain it for his own use but would regard him as holding the title in trust for Stanley. Had suit been begun while Silas held the title, before any subsequent incumbrancers or purchasers for value had acquired title without notice of the fraud and prosecuted to a conclusion, equity would have restored the title to the minor. A suit in equity was begun in the circuit court of Piatt county by the appellant by his guardian, and his brothers and sisters, seeking, among other things, to set aside the conveyance by Roy Sievers, guardian of Stanley Sievers, to Silas Sievers, against Silas Sievers, the Illinois Joint Stock Bank of Monticello, the First National Bank of Monticello, the State Bank of Deland, the Equitable Life Insurance Society of the United States, George B. Noecker, and others. This suit, however, was begun after Silas Sievers had mortgaged the interest of Stanley included in the guardian's deed to Silas, together with other land, for $26,000, and judgments had been taken against Silas by his creditors. While it was pending Stanley's guardian filed a petition in the county court to compromise the judgment against Silas of $5201.28 and the suit in the circuit court, for fifty per cent of the amount of the judgment, and the court upon a hearing of the petition entered an order authorizing the guardian to accept $2604.50 in full settlement by compromise of the judgment and of all rights of the minor in the matters involved in the suit pending in the circuit court of Piatt county. This sum of money was paid and accepted by the guardian in full settlement, as authorized by the order. Section 17 of the act in regard to guardians and wards authorizes the compounding by the guardian of demands due the ward

324

with the approbation of the county court. There is no allegation or evidence of any irregularity in the order, defect in the proceeding in the county court or misrepresentation, misconduct or fraud in procuring it to be entered. It is not subject to collateral attack.

The decree of the circuit court is affirmed.

*Decree affirmed.*