City National Bank and Trust Company of Chicago, Plaintiff and Interpleader, v. James Dunham et al., Defendants.
James Dunham et al., Appellants, v. City National Bank & Trust Company of Chicago et al., Appellees.

Gen. No. 41,021.

Burke, J., dissenting.

Opinion filed June 19, 1940. Rehearing denied September 10, 1940.

Prescott, Burroughs & Taylor, of Chicago, for appellants; Patrick B. Prescott, Jr., A. M. Burroughs, Archibald J. Carey, Jr. and Horace E. Galloway, all of Chicago, of counsel.

Wendell E. Green, for certain appellee and *pro se.*

HENRY C. FERGUSON, of Chicago, for certain other appellee.

MR. PRESIDING JUSTICE DENIS E. SULLIVAN delivered the opinion of the court.

From a decree entered on June 30, 1939, in the circuit court in a suit of interpleader, James Dunham, individually and as executor of the last will and testament of Frances Brundage, deceased, Ophelia Abrams, Anthony Cummings and Leroy Cummings, bring this appeal.

The so-called bill of interpleader was filed by the plaintiff City National Bank and Trust Company of Chicago. In that bill it is alleged that on or about June 4, 1919, there was opened with the National City Bank and Trust Company of Chicago, predecessor of plaintiff, a savings account in the name of Frances Brundage; that on or about October 6, 1932, plaintiff assumed the debt which had arisen by virtue of the deposits to said savings account; that the amount of said debt and all accrued interest thereon amounted to $1,439.63, and that said savings account is now evidenced by a passbook issued by plaintiff and numbered 31955, and that James Dunham has possession of said passbook.

Said complaint further alleges that on or about the time said savings account was opened there was delivered to said National City Bank of Chicago a signature card or record bearing the purported signature of a Frances Brundage; that when plaintiff assumed said debt as aforesaid, it received said signature card or record and now has possession thereof; that plaintiff has no other signature card or record.

Said complaint further alleges that it is and has been for many years a general custom in Chicago, Illinois, for banks to identify each of their depositors by his signature, entered upon a signature card retained by the bank, and to permit a withdrawal from a savings account only upon a withdrawal order or receipt bearing a signature written by the person who signed the signature card appertaining to the particular account; that

such correspondence of signatures is also required by plaintiff's rules and conditions for savings deposits, to which every depositor has consented and by which he is bound; that paragraph 6 of such rules and conditions provides in part that "withdrawals of deposits and interest shall be made only upon presentation of the passbook accompanied by a withdrawal receipt or written order signed by the depositor as entered upon and in conformity with the signature cards of the Bank; . . . ."

Said complaint further alleged that during her lifetime, in the early part of 1938, the said Frances Brundage presented to plaintiff a withdrawal order or receipt bearing her true and genuine signature; that plaintiff ascertained that the signature "Frances Brundage" on said signature card or record was written by a different person from the Frances Brundage who signed said withdrawal order or receipt; that by virtue of said custom and said rules and conditions, plaintiff declined to allow said Frances Brundage to make any withdrawal from said savings account unless and until she could establish satisfactorily that the money deposited to said account was her property and that no other person had any right, title or interest in said savings account. These last two allegations are contradictory but tend to show that plaintiff was inequitably holding the money after Frances Brundage had complied with the terms of deposit.

Said complaint further alleges that said Frances Brundage during her lifetime informed plaintiff that the name Frances Brundage was written on said signature card or record by her daughter, whose name at the time she signed the signature card was Bettie White; that plaintiff has since been informed that Bettie White was the same person as Bettie Wimms who died on or about November 25, 1935, as aforesaid.

Said complaint further alleges that on or about March 14, 1938, said Frances Brundage brought an action

against said City National Bank and Trust Company of Chicago in the Municipal Court of Chicago, in case No. 2781133, entitled, *"Frances Brundage, Plaintiff v. City National Bank and Trust Company, a corporation, Defendant,"* to collect said debt which had arisen by virtue of said savings account; that after the death of said Frances Brundage on or about June 8, 1938, her death was suggested to the court and the executor of her will, said James Dunham, was substituted as party plaintiff in said case No. 2781133; that said case is still pending in the municipal court of Chicago.

The prayer contained in said complaint is that a guardian ad litem may be appointed for the infant defendant, said Mary Frances Wimms Price; that defendants may severally set forth to which of them the said indebtedness in the amount of $1,439.63 by reason of said savings account does of right belong and is payable and how in particular they make out their claim thereto; that the defendants may interplead and settle and adjust their said demands between or among themselves, the plaintiff being willing and desirous and agreeing that said indebtedness may be paid to such one or more of them to whom the same shall, in the judgment of this court, appear of right to belong; that plaintiff may be allowed its costs in this proceeding; that plaintiff may be at liberty to bring and pay the said sum of $1,439.63, less its costs aforesaid, into court in full payment and discharge of said indebtedness, as the court shall direct, which plaintiff hereby offers to do, for the benefit of such of the defendants as shall appear to be entitled thereto, and subject to the further order of the court; that the defendant James Dunham, individually and as executor of the will of Frances Brundage, deceased, and his agents and attorneys, may be restrained, both temporarily and permanently, by the injunction of this court, from proceeding against said City National Bank and Trust Company of Chicago in said action pending in the municipal court of Chicago

on account of said indebtedness; that said James Dunham may be directed and ordered to dismiss said case No. 2781133 in said municipal court; that all of the defendants may be restrained and enjoined, both temporarily and permanently, from commencing any action or actions of any kind against said City National Bank and Trust Company of Chicago for the recovery of said indebtedness, or any part thereof, or touching any matters or things aforesaid; that the said James Dunham, individually and as executor of said will, may be decreed to deliver and surrender the passbook evidencing said savings account and said indebtedness to the plaintiff for cancellation; and that the plaintiff may have such other and further relief in the premises as equity may require and to the court shall seem meet.

The decree entered in this case found in favor of the plaintiff bank and said decree is much broader in its terms than is justified by the pleadings, the evidence or the law.

It will be noted in this claim filed that no allegation is made that any one has made a demand, other than one person, to wit, Frances Brundage, and that said demand was made by a suit being commenced in the municipal court.

In *Partlow v. Moore*, 184 Ill. 119, at p. 121 the court said:

"As a general rule, a bill of interpleader lies where two or more persons claim the same fund or property by different, adverse interests, and the custodian, who is indifferent between them, does not know to whom the fund or property of right belongs. (*Newhall v. Kastens*, 70 Ill. 156; *Cogswell v. Armstrong*, 77 id. 139; *Ryan v. Lamson*, 153 id. 520.) Here there was no adverse claim interposed to the money in the hands of the master, and upon that ground alone the relief prayed for in the bill might be denied."

Even if the complaint were sufficient, the proper procedure in an interpleader suit is to hear the evidence,

if any, on the issues made by the plaintiff's complaint and answer thereto, and a preliminary decree should be entered determining whether or not plaintiff was found to be rightfully in court and, if so found, ordering the said money paid into the registry or to the clerk of the court. Said decree should direct the defendants to interplead as between the said defendants and also should direct that the plaintiff, if found to be rightfully in court, should be discharged with its costs after paying into court the money aforesaid. On the trial of the issues between the defendants, the court should award the money in its possession to defendants to whom the court found the money rightfully belonged. Such practice and procedure was not pursued in this case.

Although the statement is made in the brief of appellees, that there are two sets of claimants for the funds involved, for which they seek an interpleader, if such a statement is accepted then one claimant to the fund asks it as the owner of a passbook of deposit and the other claimant to the fund alleges that he is entitled to it because he is an heir of some deceased person who was the depositor.

It is alleged by appellees that the money had been deposited in the savings department of the National City Bank on June 4, 1919, by Bettie Wimms adopting the name of her mother Frances Brundage; that she kept possession of the bank book, made withdrawals from the account and controlled said account. They make the further allegation that James Dunham, Ophelia Abrams, Anthony Cummings and Leroy Cummings claim the fund through the estate of Frances Brundage, deceased, James Dunham being the executor.

It will thus be seen from the statement of the bill that the origin of the suit was not through the same channel as provided by law, but the instant case sets up two separate and independent sources of claims, which, under the law, an interpleader will not lie.

We have been unable to find any evidence in the

record showing that any claim was made for this money by the so-called heirs of the estate; that the estate was closed, the final account approved and the executors discharged without making any demand for the money.

In setting forth the position of the appellee, the discussion of abstract cases appears which we do not believe are applicable in the instant case. We note there is no showing made or arguments presented as to why the jurisdiction of the municipal court should be withdrawn in the suit known as case No. 2781133, entitled, *"Frances Brundage, plaintiff v. City National Bank and Trust Company, a corporation, defendant."*

The exercise of jurisdiction by the circuit court over the probate and municipal courts, such as directing a former officer of the probate court, Seymour Wimms, to reopen an estate that had been closed for several years, also in issuing injunctional orders preventing parties to this litigation to appear in court, is not justified either by the law or the facts.

From a review of all the facts set forth here as sufficient reason for interpleader, these could have been passed upon by the municipal court. That suit was a similar action for money had and received which action was equivalent to a suit in assumpsit and that court has jurisdiction over such matters and should not be deprived of such jurisdiction by the circuit court unless rendered necessary by operation of law.

So far as we have been able to discover it has not been alleged or proven that the plaintiff will not have a complete defense in the action at law in the municipal court.

In order to maintain a bill of interpleader it has been held that the same debt, duty, or thing is severally claimed by the defendants from the plaintiff by virtue of a title dependent on or derived from a common source. *Byers v. Sansom-Thayer Commission Co.,* 111 Ill. App. 575.

It has been held that in order to maintain a bill of interpleader it is necessary that:

(1) The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded;

(2) All their adverse titles or claims must be dependent or derived from a common source;

(3) The person asking the relief, the plaintiff, must not have or claim any interest in the subject-matter; and

(4) He must have incurred no independent liability to either of the claimants, that is, he must stand perfectly indifferent between them, in the position of a stakeholder. *Snow v. Ulrich,* 126 Ill. App. 493; *Morrill v. Manhattan Life Ins. Co.,* 183 Ill. 260.

There is no statute in this State with relation to interpleader and for that reason care should be exercised to follow the practice and procedure as laid down by our Supreme Court. We think a mistake was made in the trial of this case by not following such procedure by having a preliminary hearing to determine whether or not the bill of interpleader was properly filed and, if so, have the money deposited with the court so that it would be free to handle it and decree it and dispose of it while it was in its physical possession.

No charge is made by plaintiff alleging fear or apprehension of danger on its part if it paid the money to Frances Brundage, nor is any reason interposed as to why it did not make the payment, as the allegation of its petition shows that a withdrawal certificate was presented to them, properly signed by Frances Brundage during her lifetime.

Under the allegations and proof presented in this case, we do not see how the court could consider this bill as a bill of interpleader. The money involved is still in the hands of the plaintiff, and no payment of the money has been made to the clerk of the court. The allegation that plaintiff has no interest in the fund and its offer to deposit the fund does not seem to have been acted upon in any manner.

As to the fees which the court ordered be deducted from the sum held by the plaintiff, it does not appear

from the brief whether the fees are to be considered as solicitor's fees or as fees for the guardian ad litem. If considered as solicitor's fees, the amount of time consumed in doing the necessary work in connection with the case is not set forth, and we have no way of knowing whether said fees were earned.

For the reasons herein given the decree of the circuit court is reversed and the cause is remanded with directions to dismiss the bill of complaint for want of equity at plaintiff's costs.

*Decree reversed and cause remanded with directions to dismiss bill for want of equity.*

HEBEL, J., concurs.

MR. JUSTICE BURKE, dissenting: In the answer filed by appellants, no objection was interposed as to the propriety of the complaint in interpleader. The answer admits paragraphs 1, 2, 3, 4, 5, 6, 8 and 9 of the complaint, and neither admits nor denies paragraphs 7, 10 and 12 thereof. Paragraph 10 of the complaint avers that plaintiff is uncertain as to the person or persons to whom it is indebted by reason of the account in dispute, and that it is anxious to have the court determine who is entitled to the fund. Paragraph 12 alleges that plaintiff has not colluded with any one or more of the defendants touching the matters in controversy, nor is it in any manner indemnified. This paragraph also avers that the complaint was not brought at the request of any defendant. Paragraph 1 of section 40 of the Civil Practice Act (par. 164, ch. 110, Ill. Rev. Stat. 1939 [Jones Ill. Stats. Ann. § 104.040]) provides that general issues shall not be employed, and that every answer and subsequent pleading shall contain an explicit admission or denial of each allegation of the pleading to which it relates. Paragraph 2 of the same section declares that every allegation, except allegations of damages, not explicitly denied, shall be deemed to be admitted, unless the party shall state in his pleading that he has no knowledge thereof sufficient to form a belief, and shall attach an affidavit of the truth of such

statement of want of knowledge, or unless the party has had no opportunity to deny. Paragraph 3 provides that denials must not be evasive, but must fairly answer the substance of the allegation denied. The answer does not state that the pleader "has no knowledge thereof sufficient to form a belief." Under these provisions of the Civil Practice Act that part of the answer which neither admits nor denies the allegations of paragraphs 10 and 12 of the complaint, in effect, admits such allegations. The parties proceeded before the chancellor without presenting any point as to whether the complaint in interpleader was proper. They submitted the case on the merits. The proper procedure is to first determine whether an interpleader is appropriate. If it is not, then the interpleader is dismissed and the parties are left to their several actions. If the interpleader lies, the approved practice is to enter an interlocutory decree providing for the dismissal out of the cause of the plaintiff, and the depositing of the funds in dispute with the clerk, or with some other depository. The remaining parties then interplead and establish the issues on which the cause is to be tried. Here the procedure was irregular in that no interlocutory decree was entered. The informality cannot, however, be taken advantage of by any of the parties for they all participated therein. The fact that the fund was not deposited is immaterial as no question is raised by anyone as to the availability of such fund when the rightful owner thereof is determined. The case was submitted on the merits and all points were duly considered by the chancellor, who saw and heard the witnesses. The decree should be affirmed.