MASSACHUSETTS MUT. LIFE INS. CO. v. WEINRESS et al.

No. 3677.

District Court, N. D. Illinois, E. D.

Oct. 8, 1942.

Eckert & Peterson, of Chicago, Ill., for plaintiff.

Malkin, Glick & Malkin, of Chicago, Ill., for defendants.

Martin S. Gerber, of Chicago, Ill., for guardian ad litem.

CAMPBELL, District Judge.

This is an interpleader suit filed under the Federal Interpleader Statute (U.S.C.A. Title 28, Section 41(26) ) by Massachusetts Mutual Life Insurance Company against William Weinress, individually and as guardian of the estates of Shirley Springer (sometimes in the pleadings and exhibits her name is spelled Shirle) and William J. Springer, Jr., minors, Ernest John Springer, individually and as trustee under Trust Agreement dated February 4, 1941, Shirley G. Springer, William J. Springer, Jr., and Ocean County National Bank, successor trustee under said Trust Agreement, and unborn child or children of Shirley G. Springer and William J. Springer, Jr., minors. The res is $41,831.39, being the proceeds of two insurance policies, and has been paid into the registry of the court. Answer has been filed by William Weinress as guardian of the estates of Shirley G. Springer and William J. Springer, Jr., minors. On motion of attorneys for plaintiff, a guardian ad litem was appointed by the court for Shirley G. Springer and William J. Springer, Jr., minors and the unborn children, if any, of said Shirley G. Springer and William J. Springer, Jr.; this guardian ad litem has filed an amended answer and counter-claim herein.

The case has come on for trial before me on the preliminary issue as to whether or not the bill of interpleader would lie. A hearing has been held on this issue, and a transcript of the evidence filed in the case. At the conclusion of the hearing, I took the matter under advisement on briefs, filed by the respective parties.

The essential facts are not in dispute. On September 7, 1922, Massachusetts Mutual Life Insurance Company issued to William J. Springer its policy upon his life in the sum of $25,000; on September 25, 1922, it issued a second policy for $15,000. The beneficiary in each instance was Marie Springer (who was then the wife of William J. Springer). On October 18, 1937, the insured executed a change of beneficiary under the terms of which the insurance company was directed upon insured's death to divide the proceeds of the two policies in equal shares, one for the

benefit of his daughter Shirley, and one for the benefit of his son William (or their lawful issue if they should not be living); the funds were to be retained by the company under its option D, which provided that the company would pay interest on funds left with it at not less than 3% per annum. The change of beneficiary further provided that the shares payable to the children should accumulate until each child attained the age of 21, at which time his (or her) share, with interest accumulations, should be payable in monthly installments of $150 each until the proceeds, together with interest, were exhausted. On February 4, 1941, the insured executed another change of beneficiary whereby his brother, Ernest J. Springer, was made beneficiary of both policies. This latter change of beneficiary had a typewritten clause providing that the company was to retain the proceeds as provided in its option D, and pay the interest quarterly to the brother, subject to his right to withdraw the whole or any part of the funds retained; and with a further proviso that upon the death of the insured and the brother, the proceeds (or net balance thereof) were to be divided in equal shares among the insured's children, Shirley and William J. (or the lawful issue of any child deceased). There was a further proviso that any child after attaining the age of 21 might withdraw from the principal, subject to the limitation that not more than four withdrawals may be made by the child in one installment year, and that the total amount withdrawable in any installment year should not exceed $2,000. The insured and Ernest J. Springer entered into a written trust agreement dated February 4, 1941, whereby Ernest J. Springer acknowledged receipt of the two insurance policies (inter alia) and agreed that the property was to be divided into three equal shares, one share to become the property of Shirley G. Springer, and one share the property of William J. Springer, Jr., and one share the property of Alys Springer, wife of William J. Springer. (Alys Springer died shortly after the death of William J. Springer, the insured, and may be disregarded for the purpose of the present controversy.) This Trust Agreement was not prepared by an attorney, and was loosely worded; it went on to provide as follows:

"The shares of Shirley Springer and Wm. J. Springer, Jr., are to be held in trust for their benefit by E. J. Springer and such parts of the principal and income

therefrom are to be paid to them at such times and in such amounts as E. J. Springer, in his opinion, deems to be to their respective interests.

"It is the desire of Wm. J. Springer that the respective shares of the 2 children be liquidated by the time Shirley reaches the age of 40 and Wm. Jr. the age of 35.

"Should either child die before the complete liquidation of his share, the balance remaining is to administer for the benefit of his or her children, but if death occurs without issue, his or her share is to become the property of the other and administered for that ones benefit.

" * * * Should E. J. Springer die before the complete liquidation of this trusteeship set up by the death of Wm. J. Springer, it is to be then turned over to Wm. J. Springer, Jr. for administration, provided he has reached the age of 21. Should Wm. Jr. still be a minor at the time of the death of E. J. Springer, the trusteeship in the interim is to be given to the Ocean County National Bank of Point Pleasant, N. J. and then when Wm. Jr. reaches the age of 21, the Trust is to be given over to his care. Should Wm. Jr. have died before E. J. Springer, the trusteeship shall be given over to Shirle Springer and administered as she sees fit.

"This agreement may be at any time dissolved by Wm. J. Springer previous to his death, or revised or amended only at his specific request."

William J. Springer died February 11, 1941, seven days after the date of the above agreement. Alys Springer, his widow, died June 23, 1941. At the time of the filing of this suit, Shirley Springer and William J. Springer, Jr., were minors, Shirley Springer having been born September 12, 1924, and William J. Springer, Jr., having been born on April 15, 1928.

On February 12, 1941, Ernest J. Springer furnished plaintiff with his proof of claim and elected to leave the proceeds of the policies on deposit with the company and to receive interest thereon quarterly. Pursuant to this arrangement, plaintiff issued and delivered to him its installment checks as follows:

| | | |
|---|---|---|
| (a) February 21, 1941 | $ 28.78 |
| (b) May 17, 1941 | 371.50 |
| (c) August 17, 1941 | 361.31 |
| Total: | $761.59 |

The remaining proceeds of the policies, being the funds now in dispute, amount to $41,831.19.

The fact that Ernest J. Springer had acquired his interest in the insurance policies, as trustee, was unknown to the insurance company until October 29, 1941. On that day Sol R. Malkin, attorney for William Weinress, guardian in the Probate Court of Cook County, of the estates of Shirley Springer and William J. Springer, Jr., minors, gave written notice to the insurance company of the existence of the Trust Agreement dated February 4, 1941, which notice claimed that any sums due Springer under the policy were payable to him as trustee and not individually. This notice quoted from the above Trust Agreement and recited that same had been made upon the advice of the insurance company's representative in Chicago, but that, inadvertently, the change of beneficiary was prepared in such a manner that it permitted E. J. Springer to withdraw the funds for his own use and benefit, without in any way making any accounting. The notice went on to say that on request E. J. Springer had returned to the custody of the Probate Court of Cook County all of the jewelry, the cash, and the Liberty Bonds which were also mentioned in the Agreement of February 4, 1941, and continued as follows, referring to E. J. Springer: "He has, however, steadfastly refused not only to turn over the funds as represented by the proceeds of the insurance policies in your company, but has definitely stated that it is his intention to retain the benefits of these insurance policies for his own use without in any way accounting either to the minor children or to William Weinress, Guardian of the person and estate of the two minor children."

This letter went on to say that the Probate Court of Cook County (on petition of the guardian) had given the guardian authority to take such action as seemed fit and proper; that the guardian finds it necessary to institute legal action to recover the proceeds of the policies, and concluded: "This letter is for the purpose of advising you to disregard any request on the part of E. J. Springer to withdraw any of the principle or interest of the moneys on deposit with you by virtue of the policies afore mentioned until the matter has been definitely concluded in a court of law." On the same day on which the letter was received by the insurance company, Mr. Malkin called personally on the proper officer of the insurance company at the home office in Massachusetts and there was discussion with Mr. Malkin in which the latter said that Mr. Springer had refused to be bound by his agreement with his brother and in which Mr. Malkin delivered to the insurance company a photostatic copy of the Trust Agreement.

On October 31, 1941, Weinress as guardian (through his attorney, being one of the attorneys of record in this case) filed his sworn complaint in Chancery in the Superior Court of Cook County, Illinois, against Massachusetts Mutual Life Insurance Company and E. J. Springer in which he recited the same facts as above set out, and alleged the trust on the part of E. J. Springer, the repudiation thereof by Springer and prayed for an injunction against the insurance company and for an order finding that the proceeds of the policies should be awarded to Weinress as such guardian. Pursuant to the sworn complaint, a temporary injunction was issued, enjoining the insurance company from paying out any of the proceeds of the policies. The injunction writs were duly served.

Subsequently thereto, settlement negotiations took place between Weinress as guardian and E. J. Springer resulting in Weinress as guardian filing on November 12, 1941, his verified petition in the Probate Court, in which he again denominated the agreement of February 4, 1941, as a Trust Agreement and further recited that the guardian, through his attorneys, had arrived at a settlement with E. J. Springer and asked for leave of court to deliver to Springer a bracelet said to be the property of the estate of Alys Springer, and to go to New Jersey or Massachusetts for the purpose of negotiating or settling the insurance claim. The Probate Court entered an order on November 12, 1941, pursuant to the prayer of this petition. On November 21, 1941, one of the attorneys of record for Weinress wrote a letter to the insurance company enclosing the following:

1. Letter dated November 18, 1941, signed by E. J. Springer personally, under which Springer, individually, directed the insurance company to issue its check for $41,831.39 to Weinress, guardian of the estate of Shirley Springer and William J. Springer, Jr., and purported to release the insurance company from any liability by the payment of said sum to Weinress.

2. Assignment dated November 18, 1941, executed by E. J. Springer personally, to Weinress as guardian of the proceeds of the two policies.

3. Certified copy of an order entered in the Superior Court of Cook County dismissing the suit filed by Weinress against the insurance company.

4. Certified copy of letter of guardianship issued by the Probate Court of Cook County to Weinress as guardian of the estates of the minors.

5. Letter from Weinress to the insurance company requesting its check for $41,831.39.

Plaintiff, the insurance company, took (and still takes) the position that the above did not sufficiently protect it and under the circumstances and history of the case, on December 1, 1941, it filed herein the present bill of interpleader. Defendant Weinress, as guardian, claims that interpleader will not lie because at the time of the filing of the complaint there were not two or more defendants adversely claiming the same sum of money. The guardian also argues that he was the proper party to advance and protect the claims of the minors against E. J. Springer and his settlement of such claims under authority of the Probate Court of Cook County cannot be collaterally attacked. He, therefore, asks that plaintiff's complaint be dismissed at plaintiff's costs and the balance of the deposit on hand in the Clerk's office (after payment of proper charges and expenses of the guardian ad litem) be ordered returned to the plaintiff. Plaintiff contends that after it had received notice in various forms from Mr. Weinress and his counsel that the proceeds of the insurance policies were trust assets, it must recognize the claim of the trust to these funds and since Mr. Weinress was also claiming an interest in the proceeds of the policies, it can only receive proper discharge by paying the money into the registry of this Court in order that the rights of the minors, the trust and Weinress may be adjudicated once and for all.

The pertinent provisions of the Federal Interpleader Act under which this suit is brought, (28 U.S.C.A. § 41, Subdivision 26) are as follows:

"The district courts shall have original jurisdiction * * *

"(a) Of suits in equity begun by bills of interpleader * * * filed by any * * * corporation * * * having in * * * its custody or possession money * * * of the value of $500 or more, or having issued a * * * policy of insurance * * * of the value * * * of $500 or more * * * if—

"(i) Two or more adverse claimants, citizens of different States, are claiming to be entitled to such money * * *

"(ii) The complainant (a) has deposited such money * * * into the registry of the court, there to abide the judgment of the court * * *.

"Such a suit in equity may be entertained although the titles or claims of the conflicting claimants do not have a common origin, or are not identical, but are adverse to and independent of one another."

Hunter v. Federal Life Insurance Company, 8 Cir., 1940, 111 F.2d 551, is the closest case that I can find to the one at Bar. There the insurance company had issued a policy on the life of Hunter with his wife as beneficiary; shortly before his death, the insured wrote to the insurance company asking that the beneficiary be changed so that part of the proceeds would go to his son and the balance to one Osterlow as trustee; the insured died before the insurance company effected the change of beneficiary. The insurance company filed a plea of interpleader under the statute, making the widow, the trustee, and the children of the deceased parties defendant. The trustee filed an answer disclaiming any interest in the proceeds of the policy. The guardian ad litem of the children filed an answer claiming that the change of beneficiary was entitled to recognition, and the widow filed an answer claiming that she was entitled to the entire proceeds of the policy. The trial court awarded interpleader and the widow appealed, contending that there was no adverse contention. The Circuit Court (opinion by Judge Sanborn) affirmed the decree of interpleader, saying (page 556 of 111 F.2d):

"The appellant also contends that she was the only real claimant to the proceeds of the policy, because the claim of the children was groundless. The proceedings in the court below indicate that the contrary was true. The case was first submitted to Judge Trimble. His conclusion was that the insured had effected a change of beneficiaries prior to his death, and that the appellant was not entitled to the proceeds of the policy. Upon the subsequent submission of the case to Judge Lemley, he

reached the conclusion that the insured had not succeeded in changing beneficiaries. This difference of informed opinion clearly indicates to us that, whatever the law of Arkansas may be as to the effect of a letter such as the insured wrote the plaintiff when accompanied by the policy (and we do not question the correctness of Judge Lemley's conclusion), the plaintiff was justified in bringing this suit and asserting that there were adverse claimants to the proceeds of the policy. * * *

"The jurisdiction of a federal court to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants. Metropolitan Life Insurance Company v. Segaritis, D.C., 20 F.Supp. 739. It is our opinion that a stakeholder, acting in good faith, may maintain a suit in interpleader for the purpose of ridding himself of the vexation and expense of resisting adverse claims, even though he believes that only one of them is meritorious [citing Myers v. Bethlehem Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638]."

Dee v. Kansas City Life Insurance Company, 7 Cir., 1937, 86 F.2d 813, involved a similar question. The insurance company issued a policy upon the life of Ernest Dusky in which his wife was named as beneficiary. The insured did not reserve the right to change the beneficiary, but, nevertheless, later sent the insurance company a notice wherein he requested that the beneficiary be changed to Byron L. Dusky. After the death of the insured, the insurance company filed a bill of interpleader under the statute, averring that both the widow and Byron L. Dusky claimed the right to recover on the policy. The widow answered that the insurance company was under an independent liability to her. The District Court entered a decree of interpleader and our Circuit Court affirmed. It found that there was no independent liability and Judge Lindley in his opinion restated the basis for interpleader, in the following language (page 814 of 86 F.2d): "Interpleader is a well-established equitable remedy existing long prior to the enactment of the statute referred to. The latter enactment did not enlarge the remedial function of the action, but merely extended the jurisdiction of federal courts to the circumstances described in the act [citing cases]. The basis underlying the reasons for the equitable jurisdiction is the ever-existing desire of equity to prevent multiplicity of suits and circuity of action and to promote, without vexatious litigation, an early determination of questions in controversy."

In Harris v. Travelers Insurance Company, D.C.Pa.1941, 40 F.Supp. 154, the beneficiary under an insurance policy and a bank, assignee of the policy, claimed the proceeds. Suit was started against the insurance company by the beneficiary, the insurance company filed a counterclaim asking that the beneficiary and the bank be required to interplead. The bank denied the right of the insurance company to interpleader claiming that under the facts no one else could possibly have any interest in the policy. The court allowed interpleader, saying on page 157 of 40 F.Supp.:

"The Bank further contends that the counterclaim for interpleader must be dismissed because the Bank, as assignee, is the only one who can bring suit against the defendant. The jurisdiction of this court to entertain a bill of interpleader is not dependent upon the merits of the claims of the parties interpleaded. Metropolitan Life Insurance Company v. Segaritis, D.C., 20 F.Supp. 739; Hunter v. Federal Life Insurance Company, 8 Cir., 111 F.2d 551. In the Segaritis case Judge Maris, then a District Judge, said at page 741 of 20 F. Supp.:

" 'It thus becomes clear that the jurisdiction of this court to entertain an interpleader bill does not depend upon the validity or even bona fides of the claims of the respective defendants. It is obvious that in almost every case the claim of one of the parties will ultimately be determined to be invalid. That, however, is a matter for determination at the trial and cannot affect the jurisdiction of the court. As we have shown, the purpose of an interpleader bill is as much to protect a stakeholder from the expense of double litigation, however groundless, as it is to protect him from the risk of double liability. That in the opinion of the court he will ultimately escape the latter is no ground for refusing interpleader. Nor does the mere fact that a contractual relationship exists between the plaintiff and one of the defendants, under which the fund is required to be paid to such defendant, defeat the right to interpleader.'

"If the Bank is secure in its position that it is the only claimant of merit, it will not be prejudiced by being required to interplead. Obviously there can be but one claimant entitled to the amount due."

See also Metropolitan Life Insurance Company v. Mason, 3 Cir., 1936, 98 F.2d 668; Crane v. McDonald, 1890, 118 N.Y. 648, 23 N.E. 991; Little v. St. Louis Union Trust Co., 1906, 197 Mo. 281, 94 S.W. 890; State v. Allen, 1923, 298 Mo. 231, 250 S.W. 366; 33 C.J. 432, 433.

Defendants rely on Klaber v. Maryland Casualty Company, 8 Cir., 1934, 69 F.2d 934, 106 A.L.R. 617; Partlow v. Moore, 184 Ill. 119, 56 N.E. 317; and City National Bank & Trust Company v. Dunham, 1940, 306 Ill.App. 354, 28 N.E.2d 812. The Klaber case was a bill of interpleader, filed by an Automobile Liability Insurer against its assured's judgment creditor and others seeking judgments against the assured for deaths and injuries. It was held that the bill did not lie because the company was not a disinterested stakeholder. The court brings out on page 939 of 69 F.2d, 106 A.L.R. 617, that this is the basis for its decision, saying:

"We are convinced, however, that, under the allegations of the bill, Klaber was the only defendant who was an actual claimant, and that the other defendants are persons who may become claimants depending upon whether they succeed in procuring judgments against the assured or whether they do not.

"We are also convinced that the company is not a disinterested stakeholder. It does not aver that it is. The facts pleaded show that it is not. It admits no rights in the defendants other than Klaber to the fund, and no liability of either itself or its assured to them. It occupies a position of active hostility to all defendants except Klaber, and must, if it can, prevent their ever obtaining any claims against the fund. [citing cases]. Moreover, if it succeeds in defeating their claims against its assured, there will be about $6,000 left in the registry of the court after payment of the Klaber judgment, to which the company alone will have a claim."

It is obvious that the essential facts, and the legal question involved, in the Klaber case, were so different from the essential facts and legal question involved in the present case, that it is of no force herein. I note further that the opinion in the Klaber case was written by Sanborn, Circuit Judge, who later wrote the opinion in Hunter v. Federal Life Insurance Company, 8 Cir., 111 F.2d 551, supra.

Partlow v. Moore, 1900, 184 Ill. 119, 56 N.E. 317, was a bill of interpleader by a Master in Chancery to determine to whom a portion of the proceeds of a partition sale should be paid. It appears that the parties claiming the fund consisted of the party entitled thereto under the decree and his assigns, each and all of whom had offered to receipt for the money if paid to any one of them, there being no dispute between them as to who should receive it. The court held that interpleader did not lie. This case might be applicable to the case at bar if E. J. Springer, in his individual capacity alone, had been the beneficiary of the insurance policy. He could then make an assignment to whom he wished and if he and the assignee were in accord as to how the proceeds should be paid there would be no adverse claimants on whom the insurance company could rely for interpleader. But as noted, such is not the case here. The insurance company was put on notice both by written and verbal representations and also by a suit in the State court, that E. J. Springer, while supposedly beneficiary in his own right, in reality was beneficiary under a written active trust. The insurance company, therefore, quite properly took the position that no matter what assignment Springer might choose to make, the interests of the cestuis que trustent might be outstanding and might have to be considered.

City National Bank & Trust Company, etc., v. Dunham et al., 1940, 306 Ill.App. 354, 28 N.E.2d 812, is also so different in its facts from the case at bar, that the holding is of no applicability. The plaintiff there alleged that during her lifetime a decedent having a savings account in plaintiff's bank, presented her withdrawal order bearing her genuine signature; that the bank ascertained that the signature differed from that on the signature card and declined to permit a withdrawal until the decedent established that the money was her property alone. The bill went on to say that the money was the money of a daughter who had put the money in the bank in the name of her mother, the decedent, keeping possession of the bank book, making withdrawals, and controlling the account. Both the mother and the daughter had died, and this complaint was against the representatives of the mother and of the daughter for interpleader and determination of the ownership of the fund.

The court held that certain requisites of interpleader were lacking, among others that it did not appear that plaintiff did not have or claim any interest in the subject matter or that plaintiff had incurred no independent liability to either of the claimants, and that further, the bill could not be considered as one of interpleader because the money involved was still in the hands of plaintiff and no payment had been made to the Clerk of the Court.

I conclude then that the rule of law is that if a disinterested stakeholder has knowledge that there are two or more persons who have (or dependent upon the determination of a question of law may have) an interest in the fund—that even though the stakeholder may be reasonably certain that one of the claims is meritorious and the others are not—that the stakeholder may rid himself of the vexation and expense of defending what he may think is the non-meritorious claim by filing interpleader and depositing the fund with the Clerk of the Court—always assuming that he acts in good faith. I further conclude that in a doubtful case, the doubt should be resolved in favor of permitting the action to lie. I apply these rules to the case at bar. The insurance company here, after receiving proofs of loss from E. J. Springer, individually, and after paying three quarterly installments to him in his individual capacity, received notice both in writing and verbally from the attorneys for the guardian of the minors, that E. J. Springer did not hold these policies in his individual capacity but that he held them under an express trust agreement executed by the insured while alive. A copy of this trust agreement was furnished the insurance company. Shortly thereafter, suit was started by the guardian in the state court of Illinois against the insurance company to have the proceeds of the policy paid to the guardian and a temporary injunction was issued restraining the insurance company from making any further payments to Springer as beneficiary. Certainly, as even counsel for the defendant concede, if there had been nothing further, the insurance company would have been completely justified under that state of the record in filing this interpleader.

Counsel for the defendant, Weinress, contend that the subsequent happenings before the filing of the interpleader suit changed this picture. What were these subsequent happenings? The guardian on November 12, 1941, petitioned the Probate Court of Cook County and obtained the necessary authority, to make a settlement on behalf of the estate of the minors with E. J. Springer whereby Springer was to assign to the guardian all his interest in the insurance policies, and the guardian was to confirm to Springer the quarterly installment payments theretofore made him (aggregating $761.59) and was also to deliver to him a certain bracelet, and Springer was to deliver over to the guardian some cash and Liberty Bonds in a large amount. There is a conflict in fact in the record between the testimony of the insurance company's Chicago lawyer and the testimony of the guardian's lawyer as to the substance of certain telephone conversations between the two at or about this time; the guardian's lawyer testified in substance that the insurance company's lawyer stated to him that if the Probate Court order and the necessary assignment were obtained, the insurance company would pay over the proceeds to the guardian; the insurance company's lawyer denies this, testifying that what he said was that if the contemplated Probate Court order and assignment were received that they would be considered, but that he could make no commitment in advance thereto. For the purpose of my decision, I do not think it necessary to make any fact finding on this issue, as I think the rights and liabilities of the parties are determined by the documentary evidence. The insurance company on receipt of these documents apparently took the position that since there was an express trust here as to which Springer was trustee, and the two minors were beneficiaries, that any purported assignment of the insurance res by Springer in his individual capacity would not be binding upon the insurance company (since it had knowledge of the trust) and further that any assignment for the benefit of obtaining a personal advantage to himself (the confirming of the quarterly installments and the delivery of the bracelet) would be, at the least, voidable. The insurance company apparently also took the position that Springer, because of what it considered to be his disloyalty to the trust, could no longer act for the trust but that there should be some independent trustee designated so to act. If these contentions are correct, then, in spite of the order of the Probate Court of Cook County and the purported assignment by Springer individually, there was and is still outstanding an

interest in the children as beneficiaries of the trust and this interest can be dealt with only by an independent trustee properly appointed.

■■ The belief of the insurance company that the assignment was invalid and that there is still an outstanding interest in the children of the deceased as beneficiaries of the express trust may or may not be sound as a point of law. It is not necessary for me to pass on that at this time, and I refrain from so doing. Under the authorities noted above, it is sufficient to justify the filing of this bill if there is an outstanding adverse claim and if the stakeholder is in good faith apprehensive of this claim or the expense or annoyance it may cause. Applying this doctrine, I conclude under the record in this case, with Springer, the trustee, at first repudiating the trust and then later making this purported assignment, that the insurance company was justified in its apprehension that it might be assailed later by a suit brought by the beneficiaries or by some successor trustee; that it acted in good faith under this apprehension, and that this complaint was properly filed.

■ I have considered the point made by defendant, that for this interpleader to lie would involve a collateral attack on the enabling order of the Probate Court dated November 12, 1941. I believe the point not well taken. The subject matter of this suit, the res, the $41,000 insurance proceeds, was then in Massachusetts, outside the jurisdiction of the Probate Court. Also outside the jurisdiction of the Probate Court were E. J. Springer, the repudiating trustee, and Ocean County National Bank, the designated successor trustee, both of the state of New Jersey. The Probate Court of Cook County could authorize its guardian to take such action as it directed, but in view of its limited jurisdiction over trusts (see In re Estate of Mortenson, 248 Ill. 520, 94 N.E. 120, 21 Ann.Cas. 251, where the Illinois Supreme Court held that with the limited constitutional jurisdiction of the Probate Court, the Illinois legislature was powerless to give it authority even over testamentary trusts), it was without jurisdiction to adjudicate a matter like this, even if it attempted so to do. As I read the order of the Probate Court it did not attempt so to do. See also on the narrow constitutional jurisdiction of the Probate Court—so far as trusts and general equitable matters are concerned—Dingman v. Beall, 213 Ill. 238, 72 N.E. 729; Hannah v. Meinshauser, 299 Ill. 525, 132 N.E. 820; and London & Lancashire Indemnity Co. v. Tindall, 377 Ill. 308, 36 N.E.2d 334.

Moore v. Sievers, 336 Ill. 316, 168 N.E. 259, cited by defendant, is totally different on the facts. This was a case where there was an order confirming a sale of minor's property procured by the false report of the guardian that he had complied with the order of sale and sold the land for cash when, in fact, he had sold it for an unsecured note. The court held the order is subject to attack collaterally for the fraud at any time during minority or within the time for suing out a writ of error thereafter; but where an innocent third party has purchased the property for value in reliance upon the order of confirmation he will be protected, as the court had jurisdiction to order and confirm the sale.

■ I have also given consideration to the point raised by the defendant that the Trust Agreement while authorizing the continuance of the trust until Shirley reaches the age of 40 years and William J., Jr., reaches the age of 35 years, fixes merely the maximum age beyond which the settlor desired that the shares be not withheld, and that it does not fix any minimum time within which the shares may not be paid to, or for the benefit of the minors. Without commenting upon whether or not that construction may be sound, the question here is not whether there has been created an irrevocable trust until the minors arrive at the respective ages stated, but whether there is such reasonable belief for the insurance company's so fearing that it ought to be given the protection of the Interpleader Act which allows it, on compliance therewith, to protect itself against the expense, risk, and annoyance of possible further litigation. I hold that there is in this case such reasonable belief.

■■ There was some reference in the briefs to possible lack of diversity of citizenship; this point, however, has not been strenuously argued. Under my view of the case, there were adverse claimants at the time of the filing of the suit, and with the Illinois guardian on one side and Springer and the Ocean County Bank, both of New Jersey as purported trustees on the other side, the necessary diversity of citizenship existed. (This is in addition

to the point decided in Hunter v. Federal Life Insurance Co., 8 Cir., 111 F.2d 551, supra, that the citizenship of the plaintiff insurance company may be relied on as part of the basis of diversity of citizenship to give the federal court jurisdiction.)

A decree of interpleader will issue. Plaintiff is directed to prepare such decree in conformity with the prayer of its complaint and to submit the same upon notice to all parties to the Court for entry.