**Clayton D. Eulette, Executor, Appellant, v. Albert F. Zilske, Conservator, Appellee.**

**Anna B. Zilske, Appellant, v. Albert F. Zilske, Conservator, Appellee.**

### Gen. No. 25,534.

1. WORKMEN'S COMPENSATION ACT—*when conservator of insane person not entitled to award.* Where the care of an insane person had been provided for by the State at the time of his father's death, his conservator was not entitled to the award made under the Workmen's Compensation Act for the death of the father.

2. WORKMEN'S COMPENSATION ACT—*daughter's right to award for death of father.* A daughter who lived with and kept house for her father, handling his money and paying all the bills and having no other means of support, this relation being maintained until his death, was entitled, under section 7(b) of the Workmen's Compensation Act [Cahill's Ill. St. ch. 48, ¶ 207(b)] to an award made under that act for the death of her father.

3. INTERPLEADER—*when executor not entitled to fees for filing.* An executor is not entitled to any fees for filing an interpleader to have determined who is entitled to a sum awarded under the Workmen's Compensation Act for the death of his testator.

4. EQUITY—*necessity for objecting and excepting to fees allowed master.* A contention that the fees of a master in chancery were not properly itemized is untenable when no objections or exceptions were made on that subject.

Appeal from the Circuit Court of Cook county; the Hon. Charles M. Walker, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1919. Reversed and remanded with directions. Opinion filed October 5, 1921.

Albert E. Beath, for appellants; John W. Ellis, of counsel.

A. B. Dunning, for appellee; Abel L. Allen, of counsel.

Mr. Justice Taylor delivered the opinion of the court.

This is a bill of interpleader, filed by Clayton D. Eulette, executor of the last will and testament of Herman Zilske, deceased, to have determined to whom shall be paid the sum of $3,500, payable at the rate of $12 a week, which amount was recovered under the Workmen's Compensation Act from the Central Locomotive & Car Works, for causing the death of Herman Zilske.

The evidence shows substantially the following: On November 22, 1916, Herman Zilske, while employed by the Central Locomotive & Car Works, was killed, and pursuant to the obligations of the Workmen's Compensation Act, and the authority and approval of the Industrial Board, the executor (the complainant herein) made a settlement with the Central Locomotive & Car Works in the sum of $3,500, that sum to be paid at the rate of $12 per week. These amounts, as they fall due, are now being paid to the complainant, as executor.

Herman Zilske and his wife, Maria Zilske, were divorced on June 4, 1913. She received at that time $3,750 in full of alimony, dower and solicitor's fees.

The heirship of the deceased is as follows: Paul, a son, the eldest child, who is living and insane; Anna, a daughter, 31 years of age; Albert, a son, who is 29

years of age; Elizabeth, a daughter, who is 25 years of age, and died after the death of her father; Harry, a son, 21 years of age; Charles, a son, who died after his father. There were four other children all of whom died in infancy. Maria Zilske, the wife, died after the death of her husband, Herman Zilske. At the time of the death of Herman Zilske all the children, who were living, were of age except Carl who was 15 years of age. The decree for divorce provided that Maria, the wife, should have the care of the then minor children, Harry and Carl, and should be entitled to their earnings and maintain them from her own funds. Anna Zilske, the eldest daughter, from the time of the divorce, lived with her father, all the others with the mother. It is her testimony that she was working in the city, and he asked her to come and keep house for him; that she did so; that he turned over all his wages to her, and told her to pay all the bills, which she then did; that she had no other means of support; that she lived with him until his death.

Herman Zilske, upon his death, left a last will and testament, dated July 9, 1913, in which his daughter Anna Zilske is made sole beneficiary.

In the county court of Cook county, on August 13, 1914 (prior to the death of his father), Paul Zilske, the eldest son, was adjudicated insane. The records of that court contain the notation "Nobody to help." After the death of his father, Albert F. Zilske, the second son had himself appointed conservator of his insane brother, Paul Zilske. At the time of his father's death, Paul Zilske was in an insane asylum. From time to time, the father gave some small amounts of money for the support of Paul. The son Albert says he once gave him $10 to buy clothing for Paul. In January, 1915, Paul ran away from the asylum at Kankakee, and went to his father's; and afterwards stayed several months with his mother. Paul had no estate of any kind. It was found by the master, whose

report was approved, and it was decreed by the chancellor, that the compensation to be paid under the Workmen's Compensation Act should go to Albert F. Zilske, as conservator of Paul Zilske (insane), on the theory, apparently, that Paul Zilske was a pauper and that his father, Herman Zilske (deceased), was, under the provisions of the Pauper Act, legally liable for the support of his insane son.

It is the contention of Anna B. Zilske that her father was not legally liable, at the time of his death, under the provisions of the Pauper Act for the support of her insane brother, Paul Zilske, and that the Pauper Act does not confer a right of action upon the "poor person"; that the only remedy is by the county for its use.

Section 7 of the Workmen's Compensation Act (Cahill's Ill. St. ch. 48, ¶ 207) is, as far as material, as follows:

"The amount of compensation which shall be paid for an injury to the employee resulting in death shall be:

"(a)    If the employee leaves any widow, child or children whom he was under legal obligation to support at the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than one thousand five hundred dollars and not more in any event than three thousand five hundred dollars.    Any compensation payments other than necessary medical, surgical or hospital fees or services shall be deducted in ascertaining the amount payable on death.

"(b)    If no amount is payable under paragraph (a) of this section and the employee leaves any widow, child, parent, grandparent or other lineal heir, to whose support he had contributed within four years previous to the time of his injury, a sum equal to four times the average annual earnings of the employee, but not less in any event than one thousand five hun-

dred dollars and not more in any event than three thousand five hundred dollars.''

Section 1, chap. 107, Hurd's Rev. St. (Cahill's Ill. St. ch. 107, ¶ 1) is as follows:

''That every poor person who shall be unable to earn a livelihood in consequence of any bodily infirmity, idiocy, lunacy, or other unavoidable cause, shall be supported by the father, grandfather, mother, grandmother, children, grandchildren, brothers or sisters of such poor person, if they, or either of them, be of sufficient ability: Provided, that when any persons become paupers from intemperance, or other bad conduct, they shall not be entitled to support from any relation, except parent or child.''

Section 2 (Cahill's Ill. St. ch. 107, ¶ 2) provides:

''The children shall first be called on to support their parents, if there be children of sufficient ability; and if there be none of sufficient ability, the parents of such poor person shall next be called on if they be of sufficient ability; and if there be no parents or children of sufficient ability, the brothers and sisters of such poor person shall next be called on, if they be of sufficient ability; and if there be no brothers or sisters of sufficient ability, the grandchildren of such poor person shall next be called on, if they be of sufficient ability, and next the grandparents, if they be of sufficient ability: * * * Provided, further, that when the county in the first instance shall furnish support to such persons as are mentioned in section 1 of this Act, that the county can sue the relatives mentioned in this section, in the manner provided in this act, for any sum or sums paid by the county for the support of such person mentioned in section 1 of this act.''

Section 3 (Cahill's Ill. St. ch. 107, ¶ 3) provides as follows:

''Upon any failure of any such relative, or relatives, to support such poor person as provided by this act, it shall be the duty of the state's attorney to make complaint thereof to the county court of his county, against all the relatives of such pauper in this State,

liable to his support, and prosecute the same."

Section 15, chap. 85, of Hurd's Rev. St. (Cahill's Ill. St. ch. 85, ¶ 15) provides:

"All insane persons admitted to any State hospital or asylum shall be maintained and treated, at said institution at the expense of the State, but the cost of clothing, transportation and incidental expenses, shall be defrayed at their own expense, or that of the county from which they were admitted."

Section 16, chap. 85, of Hurd's Rev. St. (Cahill's Ill. St. ch. 85, ¶ 16) provides as follows:

"It shall be the duty of the county judge, at the time of each inquest in lunacy, to inquire into the pecuniary condition of the person alleged to be insane and the relatives who are bound by law to maintain him."

The only contest here, it will be seen, is that between the daughter and the conservator of the insane son; whatever rights others may have had are not before us.

An examination of section 15, chap. 85, *supra*, shows that the State has already provided for the maintenance of the insane son, that is, with the exception of clothing, transportation and incidental expenses, which are to be provided by him or the county. Also, we find that when he was adjudicated insane by the county judge at the inquest in lunacy, the records show the notation "Nobody to help."

As he was provided for at the time of the death of his father and the father "was under no legal obligation to support him," the question arises whether the daughter, Anna B. Zilske, comes within the purview of the Workmen's Compensation Act.

We are of the opinion that she comes under section 7 (b) as a child of the deceased (Cahill's Ill. St. ch. 48, ¶ 207), "to whose support he had contributed within four years previous to the time of his injury," and is entitled to the whole fund.

It is contended that the chancellor erred in not allowing some compensation to the executor. We are

of the opinion that, under the law, the executor was not entitled to any fees for filing the bill of interpleader. *Metropolitan Life Ins. Co. v. Kinsley*, 269 Ill. 529. In that case the court said: "The general rule has always prevailed in this State that solicitor's fees could not be taxed as costs in a chancery suit without statutory authority; that while a court of equity had discretion in awarding costs it must confine that discretion to the fees authorized by the statute." Our law is rather rigorous, and differs from that of many other jurisdictions. 2 Perry on Trusts (6th Ed.), secs. 916-918.

It is contended that the master's fees were not properly itemized. No objections or exceptions were made on that subject. The contention is therefore untenable.

The decree will be reversed and the cause remanded with directions to enter a decree that the fund be paid to the defendant, Anna B. Zilske.

*Reversed and remanded with directions.*

O'CONNOR, P. J., and THOMSON, J., concur.