## HUNTER v. FEDERAL LIFE INS. CO. et al.

### No. 11619.

Circuit Court of Appeals, Eighth Circuit.

May 8, 1940.

Rehearing Denied May 24, 1940.

Herschell Bricker, of Little Rock, Ark., for appellant.

J. H. Carmichael, of Little Rock, Ark., for appellee Federal Life Ins. Co.

Before SANBORN, THOMAS, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

This appeal is from a decree for the appellant in an interpleader suit brought on October 23, 1935, by the Federal Life Insurance Company, an Illinois corporation, as plaintiff, against the appellant, her minor children, and Henry E. Osterloh, as trustee, all citizens of Arkansas, as defendants.

The plaintiff had issued in 1925 a $5,000 policy of life insurance to LaFayette M. Hunter, the husband of appellant. She was named as the sole beneficiary. The policy contained this provision: "This policy is issued with the express understanding that the Insured may, provided that it has not been assigned, change the beneficiary or beneficiaries at any time during the continuance hereof by filing with the Company a written request, duly acknowledged, accompanied by this policy, such change to take place upon the endorsement of the same hereon by the Company."

On May 12, 1932, the insured requested that the designation of his wife as beneficiary be made irrevocable. This was done by endorsement upon the policy. On October 27, 1932, with the consent of the beneficiary, the insured's right to change the beneficiary was restored and the policy was made payable to the insured's wife if living, otherwise to their three children or to the survivors or survivor thereof. These changes were endorsed upon the policy.

On August 28, 1935, the insured sent a letter to the plaintiff with reference to a change of beneficiaries.[1]

The policy accompanied the letter, and both were received by the plaintiff on August 30, 1935. No form of application for change of beneficiaries was prepared or sent by the plaintiff to the insured, and no endorsement of any such change was placed upon the policy. On September 3, 1935, the insured died. H. J. Cameron,

---

[1] "Federal Life Insurance Company of Chicago,

"Little Rock Agency,

"Little Rock, Arkansas.

"In Re: Policy No. 74,785.

"Gentlemen:

"I desire to make a change in beneficiary in the above numbered policy. The following in a general way is the manner in which I desire to designate the beneficiary:

"1. In event my son, LaFayette McClintock Hunter, Jr., shall survive me, I desire that the Company withhold sufficient funds to purchase an annuity in the sum of $5,000 for my said son La-Fayette McClintock Hunter, Jr. By this I mean that I want the Company to withhold a sufficient amount which, when placed on compound interest, will mature $5,000 on my son's twenty-first birthday which will be on the 10th day of December, 1950.

"The rest and residue of the policy I desire to be paid to Henry E. Osterloh as Trustee, and should my son, LaFayette McClintock Hunter, Jr., die prior to my death, the entire proceeds of said policy shall be paid to Henry E. Osterloh, as Trustee.

"I want the beneficiary clause to provide further that should my son die after my death and before attaining his twenty-first birthday, that the sum which would have been due him under said annuity shall be paid to my daughters, Betty Jane Hunter and Mary Ann Hunter, share and share alike, on the twenty-first anniversary of the birth of the said LaFayette McClintock Hunter, Jr., and should either of my daughters, Betty Jane Hunter and Mary Ann Hunter, die before said date, then the entire proceeds of said annuity shall go to the survivor.

"In the event of the death of all three of my children subsequent to my death, then the cash value of said annuity as of the date of my death shall be paid to my wife, Hazel Marie Hunter, and in event of her death subsequent to my death and subsequent to the death of my children, the cash value of said annuity shall be immediately payable to my estate.

"I understand, of course, that the interest rate will vary from year to year, and in figuring the annuity on a compound interest basis, you will designate the rate of interest on which said sum is levied, and the excess interest, if any, shall be paid to the residuary beneficiary.

"Will you please submit to me the proposed form for change of beneficiary and application for my signature?

"Very truly yours,

"LaFayette M. Hunter."

agent in charge of the plaintiff's agency in Little Rock, Arkansas, notified the plaintiff of the insured's death. A letter from the plaintiff to Cameron, dated September 6, 1935, enclosed blanks for establishing claim.[2] The appellant furnished proofs of death, and the plaintiff was notified that she was not agreeable to the change of beneficiary suggested by the insured in his letter of August 28, 1935, and that she claimed the entire proceeds of the policy.

The plaintiff then filed its bill of interpleader, setting up the issuance of the policy to the insured, the various endorsements upon the policy, and the receipt of the insured's letter of August 28, 1935. It alleged that the insured had done all that he could to effect a change of beneficiaries, but that, because of his death on September 3, 1935, the plaintiff had not had time to make the necessary endorsement on the policy; that the appellant was claiming the proceeds of the policy on the one hand, and Henry E. Osterloh, trustee, and appellant's three minor children were claiming them on the other hand; that the children should have a guardian ad litem appointed to defend them; that the plaintiff was unable to determine to whom the proceeds of the policy should be paid, and had paid the full amount thereof into court, in order that the court might determine that question. The prayer of the bill was that the defendants be compelled to interplead, and that, upon a hearing, the court order a distribution of the proceeds of the policy to the party or parties entitled thereto, and that the plaintiff be allowed a reasonable attorney's fee and costs.

The appellant moved to dismiss the bill on the ground that diversity of citizenship did not exist, and that the plaintiff had not pleaded that it was without interest in the subject matter. Thereafter she filed a renewal of her motion to dismiss upon the same grounds, and an answer. In her answer she admitted that the plaintiff was an Illinois corporation; that the defendants were citizens of Arkansas; that the policy in suit and the endorsements thereon were as described in the plaintiff's bill, and that the insured had died on September 3, 1935. She set out in full the insured's letter of August 28, 1935; denied that prior to his death he did all that he could to have the beneficiaries of the policy changed; admitted that she claimed the proceeds of the policy; and denied

2 "Mr. H. J. Cameron,
"908 Southern Building,
"Little Rock, Arkansas.
"Re: LaFayette McClintock Hunter—
Deceased.
"Policy No. 74785.
"Dear Mr. Cameron:
"We have received your communication of September 3 informing us of the death of the above named.
"Blanks for establishing claim are enclosed. The beneficiary named in the policy is Hazel Marie Hunter, wife, if living, otherwise to Betty Jane, Mary Ann, and LaFayette M. Hunter, Jr. You will recall that you wrote us on August 28 enclosing a letter of the same date from Mr. Hunter in which he requested that the beneficiary be changed and that a policy settlement agreement be prepared. The policy provides that 'the insured may * * * change the beneficiary * * * at any time during the continuance hereof by filing with the Company a written request, duly acknowledged, accompanied by this policy, such change to take place upon the endorsement of the same hereon by the Company.' The proper form for change of beneficiary and the policy settlement agreement had not been completed by the insured and we consequently could not change the beneficiary.

"As the matter now stands, Hazel Marie Hunter, wife, is the principal beneficiary and she should complete the claimant's statement in the proofs of death. If Mrs. Hunter is aware of the contents of Mr. Hunter's letter of August 28 and is in accord with the plan of settlement outlined therein, we probably could arrange for settlement on such a basis after the claim papers have been filed and the Claim Committee has had an opportunity to act on the claim. However, if Mrs. Hunter is not in sympathy with the arrangement therein set forth it would be necessary for us to make settlement to the Court and the Court then would properly distribute the amount payable.
"The attending physician should complete the blank provided for his statement, and the identification statement is to be furnished by some acquaintance who is familiar with the circumstances under which the death occurred.
"It also will be necessary that we be furnished with a certified or photostatic copy of the death certificate and we ask that such copy be forwarded with the other claim papers.
"Thanking you for your attention to this claim, I am,
"Respectfully,
"Executive Vice President."

that the other defendants were claiming the entire proceeds. She admitted that the children named as defendants were minors, and that a guardian ad litem should be appointed for them; denied that the plaintiff was unable to determine to whom the proceeds of the policy should be paid; alleged that the insured's letter requested the plaintiff to submit a proposed form for change of beneficiaries, and that the policy provided for an endorsement of any change of the beneficiary, and that it was the duty of the plaintiff to interpret the policy. Her prayer was for a dismissal of the bill or for judgment for the proceeds of the policy with twelve per cent penalty and a reasonable attorney's fee, together with interest.

Henry E. Osterloh, as trustee, filed an answer, disclaiming any interest in the proceeds of the policy.

The children, by their guardian ad litem, filed an answer, asserting that the insured's letter of August 28, 1935, had effected a change of beneficiaries; that an annuity for LaFayette McClintock Hunter, Jr., should be purchased from the proceeds of the policy, and that the balance of the proceeds should be paid to Henry E. Osterloh, trustee, in accordance with the directions contained in the insured's letter; and that if Osterloh failed or refused to accept the trust, the court should appoint a substitute trustee. The children's prayer was that the appellant take nothing, and that the Clerk of the Court be directed to pay to plaintiff a sum sufficient to purchase an annuity for LaFayette McClintock Hunter, Jr., and that the balance be paid to Osterloh, trustee, or some other trustee, in accordance with the terms of the trust created by the letter of the insured, and that the children be allowed a reasonable attorney's fee for their guardian ad litem.

Appellant then filed an amended answer, in which she claimed that, under the disability provisions of the policy, the insured at the time of his death was entitled to the return of $116.75, a premium which he had paid on November 18, 1934. She amended her prayer and asked for a dismissal of the plaintiff's bill or for judgment for $5,116.75 plus twelve per cent penalty, plus an attorney's fee and interest.

On June 23, 1938, the District Court, upon the pleadings, found that it had jurisdiction; that $5,000 had been deposited in the Registry of the Court by the plaintiff; that the attorneys for the plaintiff should have an allowance for their services, and that the plaintiff should be discharged upon its interplea and deposit of $5,000, without prejudice to any right or remedy of the defendants, or any of them, against the plaintiff for any further sum it might owe; and that Osterloh, trustee, and the children should proceed to establish their rights, if any. The case was then tried upon its merits, and resulted in a decree sustaining the bill of interpleader; directing the Clerk to purchase an annuity of $5,000 for LaFayette McClintock Hunter, Jr., in accordance with the wishes of the insured as expressed in his letter of August 28, 1935; providing for the payment of a fee to the children's guardian ad litem; and requiring that the residue of the fund should be retained by the Clerk until the further order of the court. The appellant appealed from this decree, but her appeal was dismissed for want of jurisdiction, since the District Court had only partially disposed of the issues. Hunter v. Federal Life Ins. Co., 8 Cir., 103 F.2d 192. Upon remand of the case, it was resubmitted and reargued. In July, 1939, findings of fact, conclusions of law, and a final decree were entered. The decree was in favor of the appellant, but it overruled her motion to dismiss, and allowed counsel for plaintiff and the guardian ad litem fees for services, to be paid from the fund.

The appellant's first contention is that the court below was without jurisdiction, because diversity of citizenship did not exist, the claimants all being citizens of Arkansas, and the plaintiff being a nominal party.

While the question of federal jurisdiction under such circumstances as here exist will not be finally put to rest until decided by the Supreme Court of the United States (see Treinies v. Sunshine Mining Co., 308 U.S. 66, 73, 60 S.Ct. 44, 84 L.Ed. ——), we think that the right of a stakeholder to be relieved of vexation, the danger of multiple liability, and the responsibility of undertaking to decide, at his peril, which of two or more adverse claimants is entitled to money or property in his hands, has the effect of making him a real party in interest. In this case the plaintiff's right to maintain this suit was controverted, and the appellant sought to subject the plaintiff to penalties and attorney's fees under the statutes of Arkansas. There was nothing unreal about the

plaintiff's controversy with the appellant with respect to its right to resort to interpleader. We think that the requisite diversity of citizenship was present.[3]

The appellant also contends that the plaintiff's bill does not contain all of the essential elements of a strict bill of interpleader in that it does not aver that there are two or more claimants in existence capable of interpleading and claiming a right to the proceeds of the policy, and in that the bill does not contain an averment that the plaintiff claims no interest in the proceeds of the policy or stands perfectly indifferent between the adverse claimants.

It would serve no useful purpose to discuss the sufficiency of the averments of the bill as a strict bill of interpleader, since it was clearly sufficient as a bill in the nature of interpleader, which may be maintained by one who is not a mere stakeholder. Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 939, 940; Texas v. Florida, 306 U.S. 398, 406, 59 S.Ct. 563, 830, 83 L.Ed. 817, 121 A.L.R. 1179; Standard Surety & Casualty Co. of New York v. Baker, 8 Cir., 105 F.2d 578, 580.

The appellant also contends that she was the only real claimant to the proceeds of the policy, because the claim of the children was groundless. The proceedings in the court below indicate that the contrary was true. The case was first submitted to Judge Trimble. His conclusion was that the insured had effected a change of beneficiaries prior to his death, and that the appellant was not entitled to the proceeds of the policy. Upon the subsequent submission of the case to Judge Lemley, he reached the conclusion that the insured had not succeeded in changing beneficiaries. This difference of informed opinion clearly indicates to us that, whatever the law of Arkansas may be as to the effect of a letter such as the insured wrote the plaintiff when accompanied by the policy (and we do not question the correctness of Judge Lemley's conclusion), the plaintiff was justified in bringing this suit and asserting that there were adverse claimants to the

proceeds of the policy. It is to be noted that both Judges who tried this case in the court below so held. See and compare Nance v. Hilliard, 8 Cir., 101 F.2d 957.

The jurisdiction of a federal court to entertain a bill of interpleader is not dependent upon the merits of the claims of the defendants. Metropolitan Life Ins. Co. v. Segartis, D.C., 20 F.Supp. 739. It is our opinion that a stakeholder, acting in good faith, may maintain a suit in interpleader for the purpose of ridding himself of the vexation and expense of resisting adverse claims, even though he believes that only one of them is meritorious. As the Supreme Court said in Myers v. Bethlehem Corporation, 303 U.S. 41, 51, 58 S.Ct. 459, 464, 82 L.Ed. 638: "Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact."

The contention of the appellant that the assertion in her amended answer that the plaintiff was indebted under the disability clause of the policy to return a premium of $116.75 required a dismissal of its bill because that assertion showed that the amount of the liability of the plaintiff was in dispute, we regard as without merit. This assertion was frivolous because the disability clause of the policy in suit required the giving of notice of disability, and such notice was neither pleaded nor proved. Even if there had been a substantial basis for making the assertion, it would not have altered the fact that at the time this suit was commenced the plaintiff deposited in court the entire amount due under the policy, which was the amount that the appellant then claimed.

The appellant argues that the plaintiff had an adequate remedy at law (1) by refusing to pay, and permitting her to sue it in state court, and then setting up as a defense the existence of the adverse claim, or (2) by bringing a declaratory judgment suit in federal court under § 400, Title 28, U.S.C., 28 U.S.C.A. § 400. We think that the plaintiff had a right to resort to the remedy of interpleader regardless of

---

[3] Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 939, 940; Mallers v. Equitable Life Assurance Society, 7 Cir., 87 F.2d 233, 235, certiorari denied 301 U. S. 685, 57 S.Ct. 786, 81 L.Ed. 1343; Security Trust & Savings Bank v. Walsh, 9 Cir., 91 F.2d 481, 483; Penn Mutual Life Ins. Co. v. Meguire, D.C., 13 F. Supp. 967, 971; Turman Oil Co. v. Lathrop, D.C., 8 F.Supp. 870, 873. But see, Eagle, Star & British Dominions v. Tadlock, D.C., 14 F.Supp. 933, 940, and Cramer v. Phœnix Mutual Life Ins. Co., 8 Cir., 91 F.2d 141, 146.

what other remedies were available, since a stakeholder, in such a situation as the plaintiff, is to be regarded as having no adequate legal remedy or at least none as adequate as that of interpleader. Klaber v. Maryland Casualty Co., 8 Cir., 69 F.2d 934, 936.

 The last contention of the appellant relates to the court's allowance of attorneys' fees to the plaintiff and the guardian ad litem. She asserts that the court was without power to make any allowances, and that the allowances made were excessive. Since the court had jurisdiction of the suit, there can be no question of its power to make reasonable allowances for attorneys' fees.[4]

The court allowed the guardian ad litem of the children $300 for legal services, and a similar amount was allowed to counsel for plaintiff. This litigation has lasted for nearly five years. There have been two appeals. The appellant has at all times insisted that the case should be dismissed. The amount allowed counsel for plaintiff cannot be said to be so large as to indicate any abuse of discretion. So far as the guardian ad litem is concerned, the appellant had joined in the request for the appointment of such a guardian for the children. It is not suggested how his services could have been dispensed with or how he could be compensated otherwise than out of the fund deposited by the plaintiff. We think there was no lack of power and no abuse of discretion in connection with the allowance made him.

 The remedy of interpleader should, of course, be a simple, speedy, efficient and economical remedy. Under ordinary circumstances there would be no justification for seriously depleting the fund deposited in court by a stakeholder through the allowance of large fees to his counsel. The institution of a suit in interpleader, including the depositing of the fund in the registry of the court and the procuring of an order of discharge of the stakeholder from further liability, does not usually involve any great amount of skill, labor or responsibility, and, while a completely disinterested stakeholder should not ordinarily be out of pocket for the necessary expenses and attorney's fees incurred by him, the amount allowed for such fees should be modest.

The decree appealed from is affirmed.

---

[4] Mutual Life Ins. Co. v. Bondurant, 6 Cir., 27 F.2d 464, 465, 466; Allen v. Hudson, 8 Cir., 35 F.2d 330, 331; Massachusetts Mutual Life Ins. Co. v. Morris, 9 Cir., 61 F.2d 104, 105; Treinies et al. v. Sunshine Mining Co., 9 Cir., 99 F.2d 651, 655, affirmed 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. —; Sprague v. Ticonic Nat. Bank, 307 U.S. 161, 165, 59 S.Ct. 777, 83 L.Ed. 1184; Kansas City So. Ry. Co. v. Guardian Trust Co., 281 U.S. 1, 9, 50 S.Ct. 194, 74 L.Ed. 659; Storley v. Armour & Co., 8 Cir., 107 F.2d 499, 512; Gold Dust Corp. v. Hoffenberg, 2 Cir., 87 F.2d 451, 453; Guardian Trust Co. v. Kansas City So. Ry. Co., 8 Cir., 28 F.2d 233, 244.