Frank A. Mouritsen, Atty., National Labor Relations Board, of Washington, D. C. (Robert B. Watts, Gen. Counsel, National Labor Relations Board, Malcolm F. Halliday, Asst. Gen. Counsel, National Labor Relations Board, and Gerhard P. Van Arkel, A. Norman Somers, and Winthrop A. Johns, Attys., National Labor Relations Board, all of Washington, D. C., on the brief), for petitioner.

H. T. Harrison, of Little Rock, Ark. (Buzbee, Harrison & Wright and A. S. Buzbee, all of Little Rock, Ark., on the brief), for respondent.

Edward P. Russell, of Memphis, Tenn., for R. G. Morrow, president of the respondent.

Before SANBORN and JOHNSEN, Circuit Judges, and NORDBYE, District Judge.

SANBORN, Circuit Judge.

The National Labor Relations Board, on July 28, 1941, filed a petition asserting that the respondent and certain of its officers were guilty of a civil contempt for failure to comply with a decree of this

## NATIONAL LABOR RELATIONS BOARD v. LITTLE ROCK FURNITURE MFG. CO.

### No. 491, Original.

Circuit Court of Appeals, Eighth Circuit.

Nov. 28, 1941.

Court entered in this case on July 8, 1940, which decree granted enforcement of an order of the Board. This Court thereupon issued its order directing the respondent and its officers to answer the petition and to show cause why they should not be adjudged to be in contempt. They filed answers and made their returns to the order to show cause. On September 8, 1941, the Court heard the case upon the pleadings, the affidavits and counter affidavits filed by the parties. The parties were granted additional time for the filing of briefs, and the case was submitted on or about November 1, 1941.

The effect of the decree which the respondent is charged with having violated was to require it to refrain from: (a) Discouraging membership in United Furniture Workers of America (an affiliated union) or any labor organization of the respondent's employees by discharging any of its employees or in any manner discriminating in regard to their hire or tenure of employment or any term or condition of their employment; (b) in any other manner interfering with the exercise by its employees of their right to bargain collectively and to engage in concerted activities for purposes of collective bargaining and other mutual aid and protection. The decree also required the respondent: (a) To offer eight discharged employees, listed in the order of the Board, immediate and full reinstatement to their former, or to substantially equivalent, positions without prejudice to their seniority and other rights and privileges; (b) to make whole thirteen other discharged employees, listed in the order, for loss of wages suffered by them; (c) to post notices; and (d) to notify the Regional Director as to compliance.

The petition shows: that on September 24, 1940, the United Furniture Workers of America (hereinafter called "the Union") filed with the Board charges that the respondent was not complying with the decree of this Court; that the Board made an investigation of the alleged violations and thereafter entered into a stipulation with the respondent on October 7, 1940, in which the respondent agreed that to satisfy the requirements of the Board's order, enforcement of which was decreed, the respondent would reinstate seven of its discharged employees, namely, W. W. Smith, Vollie Smith, Winfred J. Whitfield, J. D. Henard, Toliver Cullins, and Clifford Harrell, to their former, or to substantially equivalent, positions without prejudice to their seniority and other rights and privileges, and that the respondent would place six discharged employees, namely, L. J. Moonighan, Richard Henard, Clois Williams, Raymond Whitfield, Earl Whitfield and Houston Shirley, upon a preferential hiring list and would offer to these employees, in accordance with their respective seniority rights, reinstatement to their former, or to substantially equivalent, positions without prejudice to any of their rights and privileges, when such positions became available in the future at the respondent's plant.

The petition alleges that the respondent violated the decree of enforcement: (1) By refusing to pay the seven employees who were to be, and who were, reinstated the same hourly wage paid to other employees doing the same kind of work;[1] (2) by failing and refusing to re-employ those employees whose names were placed upon the preferential hiring list, although positions became available which they were capable of filling but which others without preferential standing were employed to fill;[2] (3) by discharging and refusing to reinstate Frank Clark because of his membership in the Union;[3] (4) by discharging

---

[1] To substantiate this charge there are supporting affidavits of these employees to the effect that, while they were reinstated, they were paid one cent less per hour than other employees of equal rank and doing similar work.

[2] To substantiate this charge, there are supporting affidavits of these employees to the effect that the respondent has not offered them reemployment although vacancies occurred in positions which they were qualified to fill and which, according to other supporting affidavits, were filled by others who were without preferential standing.

[3] To substantiate this charge there is the supporting affidavit of Clark which is to the effect that he was vice-president of a union local and was "Shop Stewart representing the union in the Finishing Department of the Company;" that his discharge occurred after he had had an altercation with a fellow employee, but under circumstances from which it can be inferred that his union activities, rather than the altercation, caused his discharge. There are also affidavits of those who witnessed the altercation indicating it was not a serious matter.

Lloyd Ray for union activity;[4] (5) by causing the police of Little Rock, Arkansas, to remove Davis Spears, a union organizer, from the vicinity of the plant while there for the purpose of conferring with the respondent's employees on Union business.[5]

The respondent in its answer and return (in which its accused officers join) denies that it has failed in any respect to comply with the decree of this Court.

With respect to the first charge made by the Board, the respondent states that there has been no discrimination with respect to rates of pay between the reinstated employees and others in equivalent positions, and that the reinstated employees are receiving the same wages they would have received had they remained continuously in the employ of the respondent. It asserts that the Board has erroneously assumed that between May 14, 1940, when these employees were laid off, and November 1, 1940, when they were reinstated, there had been an advance of one cent an hour in the rate of pay of employees of equal standing and doing similar work, whereas the fact is that there had been no such advance.

In answer to the second charge of the Board, the respondent states that all of the men on the preferential hiring list have not been reemployed because there have not been enough vacancies in positions which they were capable of filling; that Raymond Whitfield, Earl Whitfield and Clois Williams were reemployed prior to July 4, 1941, and that the respondent will reemploy the others on the list as and when vacancies occur which they are qualified to fill.

With respect to the charge that Frank Clark was discharged because of his union activities, the respondent states, in substance, that he was discharged solely because of his altercation with a fellow employee and after a long record of similar episodes; that he was known for his inability to get along with those with whom he worked.

With respect to the charge that Lloyd Ray was discharged for union activities, the respondent states that he was discharged in the honest belief that he was distributing union literature in the plant in violation of the respondent's rules, and for no other reason; that on or about January 17, 1941, the respondent advised the Board that it would reinstate Ray if he desired it, and that Ray was at that time employed in the construction of Camp Robinson, near Little Rock, where he was earning substantially more than he could earn in the respondent's employ; that on January 31, 1941, the Board was again advised that the respondent would, upon his request, reinstate Ray; that on February 8, 1941, the respondent did reinstate him, and so advised the board; that on February 26, 1941, Ray voluntarily left the respondent's employ to accept employment at Camp Leonard Wood, near Rolla, Missouri, and the Board was informed of that fact.

The respondent denies that it was in any way responsible for anything done or said to Davis Spears by any police officer of the City of Little Rock. The respondent has attached to its answer and return affidavits of police officers who patrolled the district in which the respondent's plant is located. These affidavits are to the effect that some of the respondent's officers had received threatening letters and that bullets had been left in the automobile of W. S. Miller, an officer of the respondent; that the police had been advised of these threats; and that, as a result, they kept the plant under surveillance at closing

---

[4] The supporting affidavit of Ray is to the effect that in October, 1940, he was active in the Union; that on November 14, 1940, he attended a meeting of the Union and carried away two union circulars; that on November 15, 1940, at 6:50 A.M. he was at the plant in the crating department; that an employee by the name of Ward asked him for one of the circulars, and Ray gave him one; that this occurred before the whistle blew for work; that he gave no circular to any other person; that on that day he was discharged by the respondent for distributing union literature in the plant; that he knew of no rule of the respondent forbidding distribution of such circulars. There is also an affidavit of Ward that he received the circular from Ray before the final whistle blew.

[5] The affidavit of Spears shows that on October 26, 1940, while he was at the plant, a police officer of the City of Little Rock asked him to leave, saying, "Well, I have run you off from here time and time again. I've told you that every time that you come down here, the company calls us and we have to send a man."

time. Two of the police officers state in their affidavits that they prevented the distribution of union literature at or near the plant because that was a violation of an ordinance of the City of Little Rock. The police officers state in their affidavits that they were at no time acting under instructions from the respondent in doing what they did near the respondent's plant.

The respondent has furnished with its answer and return a comprehensive showing, consisting of affidavits, indicating that the allegations of the answer are true and that the Board is in error in charging the respondent with having failed to comply with the decree of this Court. R. G. Morrow, president of the respondent and one of the officers accused by the Board, has joined in the return of the respondent and its other accused officers, but he has also made a separate return asserting that he had no knowledge of the decree of this Court until after the order to show cause was served upon him, that his duties as president of the respondent did not embrace dealings between the respondent and its employees, and that he should not be held accountable for not obeying a decree that he did not personally know was entered. The Board contends that Morrow, as president of the respondent, must be held to have had knowledge of the decree, and that he should be adjudged in contempt.

The respondent contends that it has shown all of the charges made by the Board to be groundless. "Lawsuits also often prove to have been groundless; but no way has been discovered of relieving a defendant from the necessity of a trial to establish the fact." Myers v. Bethlehem Shipbuilding Corporation, 303 U.S. 41, 51, 52, 58 S.Ct. 459, 464, 82 L.Ed. 638; Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551, 556. The Board has investigated the charges that the respondent has not complied with the decree of this Court. The Board believes that the respondent has not complied with it, and, as already stated, has charged noncompliance in a verified petition substantiated by affidavits. We think that the Board should be required to prove by competent and material evidence that its charges are true. We are also of the opinion that the respondent and its accused officers should be accorded the right to confront the Board's witnesses, to cross-examine them, and to adduce evidence to disprove the charges.

We are unwilling to attempt to decide any of the issues, raised by the petition and the answers, upon affidavits. The weakness of affidavits as evidence is well known. It is usually impossible to determine what weight should be given to the statements which they contain, and little can be gleaned from their contents with respect to the foundation for such statements or the credibility of the affiants making them.

The testimony in this case should, for the convenience of witnesses, be taken in Little Rock, Arkansas. It is not feasible for this Court to take it because of the pressure of other work. We appoint Honorable Harry J. Lemley, United States District Judge, of Texarkana, Arkansas, Special Master to take the testimony for this Court, and to return it, together with his summary of it and his recommendations for findings of fact. If Judge Lemley is unable to act as Special Master or shall decline to do so, we will appoint some other person to take the testimony. When the testimony is taken and reported to this Court, the case will be set down for oral argument and the parties may submit briefs.