### DANVILLE BUILDING ASS'N OF DANVILLE, ILL., v. GATES et al.

#### Civ. No. 410–D.

District Court, E. D. Illinois.

July 9, 1946.

Bookwalter, Carter & Gunn, of Danville, Ill., for plaintiff.

Wm. Acton, of Danville, Ill., for Ethel Wert.

Benjamin I. Norwood, of Danville, Ill., for Elizabeth Gates.

LINDLEY, District Judge.

Plaintiff filed a complaint in the nature of a bill of interpleader under the provisions of Title 28 U.S.C.A. § 41 subdivision 26(d) which resulted in a judgment that the property in the hands of the stakeholder

belonged to and should be delivered to defendant Wert, in which the question of whether plaintiff is entitled to recover from the fund its costs and attorneys fees was reserved. That issue is now presented.

The pertinent paragraph of the act provides that the "court shall hear and determine the cause and shall discharge the complainant from further liability; and * * * enter all such other orders and decrees as may be necessary or convenient to carry out and enforce the same." This provision is substantially the same as in earlier statutes. Though the act contains no express provision for the allowance of attorneys fees, the federal courts held quite generally, at least prior to the decision in Erie v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1457, and in equity jurisprudence as it has come to us from its English ancestry, attorneys fees may be allowed at the discretion of the court. Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551; Terry v. Supreme Forest, D.C., 21 F.2d 158; Texas Co. v. Xavier, D.C., 54 F.Supp. 722; General American Life Ins. Co. v. Jackel, D.C., 42 F.Supp. 475; Stitzel-Weller Distillery v. Norman, D.C., 39 F.Supp. 182; Equitable Life Assur. Soc. of U. S. v. Kit, D.C., 22 F.Supp. 1022; Edner v. Massachusetts Mut. Life Ins. Co., D.C., 59 F.Supp. 688.

Defendant insists that since Erie v. Tompkins, supra, whether plaintiff as an interpleader is entitled to attorney's fees must be determined by the law of Illinois. The authorities in that state are conclusive to the effect that attorneys fees can not be allowed. There is no statute in the state of Illinois creating a right of interpleader, but it is a part of the state's innate equity jurisprudence. City National Bank & Trust Co. v. Dunham, 306 Ill. App. 354 at 362, 28 N.E.2d 812. The Supreme Court of Illinois in The Metropolitan Life Insurance Co. v. Kinsley, 269 Ill. 529, 530, 531, 109 N. E. 1011, 1012, said: "Although the rule is to the contrary in many other jurisdictions in this country (2 Perry on Trusts, (6th Ed.) §§ 916–918), this court refused, under its general chancery powers, following the old English rule, to allow compensation to trustees for their time and trouble in caring for trust estates, unless there was a provision for compensation in advance. * * * In Chapin v. Dake, 57 Ill. 295, 11 Am.Rep. 15, this court refused to allow solicitor's fees on a bill of interpleader, the principle involved being identical with that in the cases heretofore cited. This case has never been overruled. We are well aware that, not only in the Federal courts, but in certain other jurisdictions in this country, a different rule prevails, as is shown by the numerous cases cited by counsel for appellant; but the law has been so long and firmly established in the jurisprudence of this state on this question that it ought not now to be changed by the courts without statutory authority." The appellate court commented in Eulette, Executor v. Zilske, 222 Ill.App. 128 at page 134 as follows: "Our law is rather rigorous, and differs from that of many other jurisdictions. 2 Perry on Trusts (6th Ed.), secs. 916–918."

Consequently, in view of the fact that the decisions of the federal courts before Erie v. Tompkins conflict with the rule in Illinois, it becomes necessary to determine whether the Erie doctrine applies to the question of allowance of attorneys' fees for a successful stakeholder who has come into the federal court, when he would be denied that remedy in the state court. In Russell v. Todd, 309 U.S. 280 at 294, 60 S.Ct. 527, 534, 84 L.Ed. 754, the court expressly reserved jurisdiction upon this question, saying: "In the circumstances *we have no occasion to consider the extent to which federal courts, in the exercise of the authority conferred upon them by Congress to administer equitable remedies, are bound to follow state statutes and decisions affecting those remedies.*" (Italics mine.) In the earlier case of Sprague v. Ticonic National Bank et al., 307 U.S. 161, 59 S.Ct. 777, 779, 83 L.Ed. 1184, the court, in discussing the allowance of fees, said: "Allowance of such costs in appropriate situations is part of the historic equity jurisdiction of the federal courts. The suits 'in equity' of which these courts were given 'cognizance' ever since the First Judiciary Act, * * * constituted that body of remedies, procedures and practices which theretofore had been evolved in the English Court of Chancery, subject, of

course to modifications by Congress, e. g., Michaelson v. United States, 266 U.S. 42, 45 S.Ct. 18, 69 L.Ed. 162, 35 A.L.R. 451. The sources bearing on eighteenth-century English practice—reports and manuals—uniformly support the power not only to give a fixed allowance for the various steps in a suit, what are known as costs 'between party and party,' but also as much of the entire expenses of the litigation of one of the parties as fair justice to the other party will permit, technically known as costs 'as between solicitor and client.' * * * Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." However, it does not appear that in that case the rule in the state court differed from that under the historic equitable practice and, inasmuch as the court in the later case of Russell v. Todd, supra, expressly withheld decision of the precise question presented, it remained undecided at least until the decision in Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 1467, 89 L.Ed. 2079, 160 A.L.R. 1231. There the question was whether the state statute of limitation could be asserted as a defense in a federal equity suit. The court, in discussing the issue as to the applicability of Erie v. Tompkins, commented that Congress had provided that the forms and modes of proceeding in suits of equity should conform to the settled uses of courts of equity and said: "But this enactment gave the federal courts no power that they would not have had in any event when courts were given 'cognizance,' by the first Judiciary Act [1 Stat. 73] of suits 'in equity.' From the beginning there has been a good deal of talk in the cases that federal equity is a separate legal system. And so it is, properly understood. The suits in equity of which the federal courts have had 'cognizance' ever since 1789 constituted the body of law which had been transplanted to this country from the English Court of Chancery. But this system of equity 'derived its doctrines, as well as its powers, from its mode of giving relief.' Langdell, Summary of Equity Pleading (1877) xxvii. In giving federal courts 'cognizance' of equity suits in cases of diversity jurisdiction, Congress never gave, nor did the federal courts ever claim, the power to deny substantive rights created by State law or to create substantive rights denied by State law. This does not mean that whatever equitable remedy is available in a State court must be available in a diversity suit in a federal court, or conversely, that a federal court may not afford an equitable remedy not available in a State court. Equitable relief in a federal court is of course subject to restrictions; the suit must be within the traditional scope of equity as historically evolved in the English Court of Chancery. Payne v. Hook, 7 Wall. 425, 430, 19 L.Ed. 260; Atlas Ins. Co. v. Southern, Inc., 306 U.S. 563, 568, 59 S. Ct. 657, 659, 83 L.Ed. 987; Sprague v. Ticonic Bank, 307 U.S. 161, 164, 165, 59 S.Ct. 777–779, 83 L.Ed. 1184."

Concerning the effect of the state law upon equitable remedies in the federal court, the court added: "State law cannot define the remedies which a federal court must give simply because a federal court in diversity jurisdiction is available as an alternative tribunal to the State's courts. Contrariwise, a federal court may afford an equitable remedy for a substantive right recognized by a State even though a State court cannot give it. * * * the federal courts enforce State-created substantive rights if the mode of proceeding and remedy were consonant with the traditional body of equitable remedies, practice and procedure, and in so doing they were enforcing rights created by the States and not arising under any inherent or statutory federal law."

In a footnote the court called attention to Pusey v. Hanssen, 261 U.S. 491, 43 S.Ct. 454, 67 L.Ed. 763, where, under the state law of Delaware, the common creditor might sue for a receiver in equity whereas in the federal court he could not do so. The court construed the Delaware statute as merely extending the power to an additional group in equity but concluded that by "conferring new discretionary authority upon its equity court, Delaware could not modify the traditional equity rule in the federal courts that only someone with a defined interest in the estate of an insolvent

person, e. g., a judgment creditor, can protect that interest through receivership." But the court recognized that if the Delaware statute had been one not regulating the powers of the Chancery Court of Delaware but creating a new interest in a contract creditor, the federal court would have had power to grant a receivership at the behest of such a simple contract creditor, as much so as in the case of a secured creditor.

Concerning Erie v. Tompkins the court said further: "In essence, the intent of that decision was to insure that, in all cases where a federal court is exercising jurisdiction solely because of the diversity of citizenship of the parties, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court. The nub of the policy that underlies Erie R. Co. v. Tompkins is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away, should not lead to a substantially different result. * * * The source of substantive rights enforced by a federal court under diversity jurisdiction, it cannot be said too often, is the law of the States. Whenever that law is authoritatively declared by a State, whether its voice be the legislature or its highest court, such law ought to govern in litigation founded on that law, whether the forum of application is a State or a Federal court and whether the remedies be sought at law or may be had in equity."

■ Following the language of this opinion to its proper result, the issue here must be decided in the negative. I think it clear that the inevitable effect of this decision is that a federal court may no longer grant an equitable remedy in a diversity action where that relief is not available in the courts of the state, for, as the court said, in no case should the remedy granted by the federal court lead to a substantially different result from that obtainable in the state court.

■ Interpleader was a well-established equity remedy which existed long before the federal enactment. As I said in Dee v. Kansas Life, 7 Cir., 86 F.2d 813, 814, the act does "not enlarge the remedial function of the action, but merely extends the jurisdiction of federal courts to the circumstances described in the act." Aside from enlarging the processes of the district court, the act authorizes only an ordinary form of equitable relief. Boice v. Boice, D.C., 48 F.Supp. 183, affirmed, 3 Cir., 135 F.2d 919; National Fire Ins. Co. v. Sanders, D.C., 33 F.2d 157; Calloway v. Miles, 6 Cir., 30 F.2d 14; Metropolitan Life Ins. Co. v. Mason, D.C., 21 F.Supp. 704, vacated on other grounds 3 Cir., 98 F.2d 668. See also 55 Yale Law Journal, 267 and 401 (Feb. 1946); 45 Yale Law Journal (May, 1936); 49 Yale Law Journal, No. 3, p. 377 (Jan. 1940); Ohlinger, Federal Practice, pp. 329 to 369; 36 Ill. Law Review No. 5, p. 493 (Jan. 1942); 3 Cyc. of Fed. Procedure, pp. 13–28, pp. 100–103, pp. 520–552; 49 Harvard Law Review, pp. 950, 952, 953. Nor did the Act abrogate the right to bring suits of interpleader under general provisions of section 41(1) of title 28, which confers general jurisdiction over actions based on diversity or a federal question. Harris v. Travelers Ins. Co., D.C.Pa., 40 F.Supp. 154; Connecticut General Life Ins. Co. of Hartford v. Yaw, D.C.N.Y., 53 F.2d 684.

■ We are not dealing with a federal right. We are dealing with the rights of citizens in Illinois where the state rule denies the allowance of attorneys fees. No federal question is involved. This court has jurisdiction of the suit merely because Congress has seen fit to extend the jurisdiction to cases defined by the act. I think it clear that while the doctrine of Swift v. Tyson 16 Pet. 1, 10 L.Ed. 865, was in force, the rights of claimants in interpleader could be decided, in the absence of a state statute, by rules of "general law" worked out by United States courts independently of the decisions of State courts. But the situation was changed when Erie R. Co. v. Tompkins overruled Swift v. Tyson and held that United States courts are bound to apply the law of a state as established by the courts of the state. Uniformity of judicial doctrines of private law within a state has been obtained at the sacrifice of nationwide uniformity.

Consequently I adhere to what I said in Ross v. Service Lines, D.C., 31 F.Supp. 871, 873: "The existence or non-existence of a certain remedy and the determination of its character, as between law and equity, involve more than mere procedural questions. Consequently, I consider myself bound to follow the reasoning of the Supreme Court of Illinois and to grant to each party the rights and impose upon them the obligations that they have under the state law." This, I think, accords with the views of the United States Circuit Court of Appeals for this circuit as expressed in Toomey v. Toomey, 98 F.2d 736 at page 739.

Under the state law plaintiff is entitled to recover court costs from the fund but not counsel's fees.

Judgment will enter awarding plaintiff all court costs against the fund but denying the application for allowance of attorneys fees.