**AETNA LIFE INSURANCE COMPANY,**
a corporation, Plaintiff,

v.

Cynthia JOHNSON, Alma Johnson, and Annie Bell Carroll, Defendants.

No. 61 C 1985.

United States District Court
N. D. Illinois, E. D.

June 18, 1962.

Edward J. Griffin, Chicago, Ill., for plaintiff.

Francis Kennedy, Michael Levin, Sidney Pyster, Charles H. C. Kimball, Charles N. Brown and Norman L. Olson, Jr., Chicago, Ill., for defendants.

CAMPBELL, Chief Judge.

Plaintiff herein has brought this action under the Federal Interpleader Statute, Title 28 U.S.C.A. § 1335. Plaintiff, a stakeholder of the proceeds of a life insurance policy, has been given leave to deposit the policy funds into the registry of the Court to there await disposition of the rights of the adverse claimant defendants. Plaintiff is presently before the Court on its motion for the allowance of attorneys' fees out of the proceeds of the policy.

Over fifteen years ago in the case of Illinois Bankers Life Assurance Company v. Blood, D.C., 69 F.Supp. 705, I was presented with an analogous factual situation and rejected the interpleading stakeholder's request for attorneys' fees. I based my decision upon the law of the State of Illinois, which does not allow attorneys' fees to a party filing an interpleader action. The law of Illinois has not changed, and I presently feel that my legal conclusions in 1947 were sound then and are still sound notwithstanding some subsequent expressions to the contrary. In now reaffirming my decision in the Blood case I shall also reconsider the legal issue involved in light of some recent judicial decisions and commentaries thereon.

As a general rule in the United States, contrary to the prevailing practice in England, attorneys' fees are not taxable as costs. However, as is the case with most general rules, their broad pronouncement is always subject to exceptions. One major exception on attorneys' fees in the United States seems to exist in equity cases where a "fund" is involved. The factual situation necessary to qualify under this exception usually arises where a so-called disinterested party holds a sum of money, usually referred to as the "stake", the subject of rival claims. To avoid the stakeholder being subjected to multiple suits by the conflicting claimants, the courts historically have permitted him legally to dispose of the money or property. At early common law the "stake" was turned over to the local Bishop for his ultimate resolution "in the King's conscience" of the various claims. This procedure ultimately developed into the disposal of the stake by means of an interpleader action in Equity wherein the stake is delivered to the Chancellor's registry. The interpleading stakeholder is upon such delivery discharged from further liability and the adverse claimants are enjoined from bringing any action at Law against him. As this procedure evolved in American jurisprudence, a majority of the courts in this country have deemed it just and equitable that the stakeholder be awarded reasonable attorneys' fees along with other taxable costs.

I well understand and readily accept the principle of reasoning and the law of this majority. However, the Courts of Illinois have not seen fit to follow this majority, indeed, this State is properly counted with the minority of jurisdictions flatly denying the allowance of attorneys' fees to an interpleader. Metropolitan Life Insurance Co. v. Kinsley, 269 Ill. 529, 109 N.E. 1011. In the Blood case, I felt compelled to follow the law of the State and to deny the interpleader attorneys' fees. The facts in this case are similar to those considered by me in the Blood case; the law of the State of Illinois has not since changed;

therefore I once again follow the law of Illinois and deny to this interpleading stakeholder attorneys' fees.

In support of its motions requesting attorneys' fees plaintiff contends that in cases such as this where jurisdiction is obtained under the Federal Interpleader Statute, state law is not controlling and federal law should be applied. To buttress its contention that federal courts have and should grant such fees plaintiff cites decisions by the 2nd, 5th, 6th, 8th and 9th Federal Circuits wherein attorneys' fees were included as part of the costs and allowed in suits most of which were brought under the Federal Interpleader Statute, citing: Bank of China v. Wells Fargo Bank & Union Trust Co., 9 Cir., 209 F.2d 467; Palomas Land & Cattle Co. v. Baldwin, 9 Cir., 189 F.2d 936; Warner v. Florida Bank & Trust Co., 5 Cir., 160 F.2d 766; Globe Indemnity Co. v. Puget Sound Co., 2 Cir., 154 F.2d 249; Hunter v. Federal Life Ins. Co., 8 Cir., 111 F.2d 551; Kohler v. Kohler, 9 Cir., 104 F.2d 38; Treinies v. Sunshine Mining Co., 9 Cir., 99 F.2d 651, affirmed in 308 U.S. 66, 60 S.Ct. 44, 84 L.Ed. 85; Massachusetts Mutual Life Ins. Co. v. Morris, 9 Cir., 61 F.2d 104; Mutual Life Ins. Co. of New York v. Bondurant, 6 Cir., 27 F.2d 464. My review of these decisions clearly indicates that in all but two the issue presently before me was not presented or decided, and certainly was not even discussed. Although those courts did grant attorneys' fees, with the exception of the 9th Circuit's Palomas and Bank of China cases there is no mention by the Courts of taking this action contrary to existing state law. Inasmuch as the large majority of states do allow such fees it would follow that the Federal Courts were in effect doing what I did in the Blood case and am doing here, applying the prevailing state law. (In the Hunter case the 8th Circuit specifically states that it is following the Arkansas Statute.)

In the Palomas case, the Court of Appeals of the 9th Circuit did have before it and did consider the issue in this case. The Court, notwithstanding existing State law to the contrary, did award an interpleader attorneys' fees. In support of its decision the Court relied on some of the cases cited by plaintiff herein. As I have already pointed out none of these cases militate against my holding in the Blood decision. The Court goes further however and states that its case " * * * arose under a Federal statute and was heard and determined by a Federal Court. In Federal courts, the allowance or disallowance of costs, including attorneys' fees, is governed by Federal law, not by State law." A footnote following the terms "Federal law" cites Rule 54(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A. With due deference to the 9th Circuit Court of Appeals I believe that their reasoning as set forth above constitutes a rejection of the Erie doctrine and again attempts to create what the Supreme Court there destroyed, "that great body of federal law." Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, Guaranty Trust Company of New York v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. The Bank of China case cites and follows the Palomas decision, notwithstanding the Court there noting that the actions before it were brought as diversity suits under Section 1332.

Moore's Federal Practice, Vol. 6 page 1352, without citing the Blood decision does suggest a novel contrary theory. Advocating the same result as that reached in the Palomas case Moore reasons that Section 1335 of Title 28 creates a new "remedy" in a stakeholder " * * * where formerly he had no effective remedy." From this premise he further reasons that this new federal remedy's availability and efficiency cannot or should not be restricted by state law. However, a few pages earlier at page 1347 Moore makes the following statement: "In an action involving a non-federal matter State law should, however, normally be followed where the State law reflects a 'substantive' policy relative to nonconventional items of expense, such as attorney's fees." Apparently Moore

is suggesting, and the plaintiff herein admits, that state law relative to the granting or denying of attorneys' fees should be followed if the action is brought under the diversity statute, 28 U.S.C. § 1332 (see Republic of China v. Central Scientific Co., D.C., 20 F.Supp. 924), but, that if the action is initiated under the interpleader statute, 28 U.S.C. § 1335, then we have a federal matter and must apply federal law.

I seriously question Moore's major premise, that Section 1335 creates a new remedy where none was formerly available and that as such it is distinguishable from the diversity section. As I said in the Blood case, 69 F.Supp. at page 707, the Federal Interpleader Statute (there I cited 28 U.S.C.A. Section 41(26) which is the forerunner and in substance the same as the present Section 1335), "* * * does not create a federal right but merely extends the jurisdiction of the district courts in applying a traditional equitable remedy." In support of this statement I cited Danville Building Ass'n v. Gates, D.C., 66 F.Supp. 706, wherein the late learned Judge Lindley, when confronted with the same issue presently before me, denied the interpleading stakeholder the right to attorneys' fees, this right not being available in the courts of the State. Judge Lindley speaking of an action brought under the provisions of the Federal Interpleader Statute (he also cited the old statute, Title 28 U.S.C.A. Section 41(26)) unequivocally stated at page 709 of 66 F. Supp.: "We are not dealing with a federal right." And further: "No federal question is involved." The Judge also said "* * * in no case should the remedy granted by the federal court lead to a substantially different result from that obtainable in the state court." There clearly was no question in Judge Lindley's mind, and there is none in mine but that an intervener's right to receive attorneys' fees, or the absence of such a right, is a matter of substantive law. Were this to be considered otherwise, then the rights existing in the federal courts would differ materially from those afforded in the state courts, the attendant result being a manifest and unmistakable attenuation of the Erie doctrine.

■ I firmly reiterate my opinion that it comports and is consonant with fundamental legal principles to hold that the denying or granting of attorneys' fees relates to the substantive rights of an interpleader action. This being so, a fortiori, the Erie doctrine precludes any discretion on behalf of the federal courts; they must follow the law of the state. Moreover, were I to assume even arguendo that the question of attorneys' fees was merely procedural, still the federal courts, and I now quote from Moore's treatise, "should" follow the state law where it, the state law, "* * * reflects a 'substantive' policy relative to non-conventional items of expense, such as attorney's fees." Therefore, even assuming the issue to be procedural, the federal courts under such circumstances "should" follow the state policy. Further, where as here we are dealing with an equity action, it would be much more equitable to grant or deny the same rights to litigating parties in a particular area, whether the action be brought in the federal or the state courts.

■ The Federal Interpleader Statute does not create a new remedy. As I pointed out earlier this substantive right, or remedy if you will, was available for centuries here and in England. As Judge Lindley wrote in his masterful Danville decision, this right of a stakeholder to interplead; "* * * is a part of the state's innate equity jurisprudence." Not only is and has this right been available in the state courts, but even absent the provisions of Section 1335 this right is available in the federal courts, either under the diversity section, 1332, or possibly under Section 1331 should a federal question be involved. Section 1335 merely embraces an equitable right long enjoyed by stakeholders by reducing the jurisdictional requirements necessary to properly replace such an interpleader action before the federal courts. How can it be said that this

extension of jurisdiction creates a new remedy?

The manifest purpose of the Erie decision was to insure to litigants that the results obtainable in the federal courts would not differ substantially from those available in the local state courts. To now suggest that issues similar to this should be subjected to a federal law belies and does violence to the doctrine of Erie v. Tompkins and the purpose it was intended to subserve. I will have to wait for the Supreme Court or the Court of Appeals of my own Circuit to tell me that the Erie v. Tompkins decision has been thus repudiated.

Plaintiff's motion for allowance of attorneys' fees is denied.